JOSEPH HINEBAUGH *v.* ERNEST K. JAMES, *Tax Commissioner of the State of West Virginia*

(No. 8626)

Submitted June 1, 1937. Decided June 9, 1937.
(Written opinion filed June 26, 1937)

*J. V. Gibson* and *Cramer W. Gibson,* for relator.

*Clarence W. Meadows,* Attorney General, and *W. Holt Wooddell,* Assistant Attorney General, for respondent.

MAXWELL, JUDGE:

This is a proceeding in mandamus under the original jurisdiction of this court.

Relator, Joseph Hinebaugh, seeks to compel Ernest K. James, Tax Commissioner of the State of West Virginia, to issue to him a license as a distributor of non-intoxicating beer within this state.

The relator possesses all necessary legal qualifications of a beer distributor in West Virginia, except that he is a non-resident. Because of his non-residence he has been refused a license by the respondent.

The controversy arises under a recent statute, Acts of the Legislature 1937, Chapter 12, Article 15, Section 12 (a), which provides, *inter alia,* that an individual may not be granted a license as a distributor of beer within this state unless he shall have been a *bona fide* resident of the state for four years next preceding the date of his application for such license.

The relator takes the position, first, that the state is without authority, under the police power or otherwise, to impose a restriction such as stated; and, second, that the restriction is violative of the privileges and immunities clauses of the Federal Constitution.

The relator urges, inasmuch as the legislature has declared malt beverages not containing more than five per centum of alcohol by weight to be non-intoxicating (Acts 1937, Chapter 12, Article 15, Section 2), and, further, inasmuch as a distributor deals with containers of beer in unbroken packages, that there is no basis on which the state may properly invoke the police power in dealing with this subject.

The police power of a state is an attribute of sovereignty, co-extensive therewith, difficult of definition because it cannot be circumscribed by mere words, latent in its nature, yet, nevertheless, perennially existing as a vast reservoir of authority to be drawn on by the law-making branch of government for the public good. Within constitutional limits, the police power may be exercised to promote the safety, health, morals, and general welfare of society.

Notwithstanding the legislature has declared that beer containing not in excess of five per centum alcohol is non-intoxicating, it by no means follows that the legislature is thereby precluded from setting up strict regulations for the manufacture, distribution and retail of that commodity. Though beer be considered non-intoxicating, nevertheless, the generally known facts pertaining to the manner in which it is often dispensed and of the evils which not infrequently attend thereunto, we entertain no doubt that the legislature may set up such system of beer regulation as it may deem proper, within the Constitution. And such regulation may apply to distribution as well as to manufacturing and retailing. The situation is so closely analogous to the traffic in hard liquor, as to the regulation whereof under the police power there can be no doubt, that the propriety of strictly circumscribing the beer business seems obviously proper. Such a matter is essentially for legislative determination. The legislature, and not the courts, must determine the policy of the state to be voiced in statutory enactments.

In furtherance of its policy of strict regulation of the beer traffic, the legislature, by its requirement of four years' residence for a distributor, has taken the view not only that he shall be amenable to the direct process of the state courts, as a *bona fide* resident, but, also, that because of four years' residence within the state there will be better opportunity to determine his fitness; and further, by reason of the lapse of time required, there will thereby be a bar against undesirable non-residents coming into the state for the sole purpose of becoming distributors of beer. There is no inherent right in any in-

dividual, whether he be a citizen or not, to engage in a business which the state, in the exercise of the police power, has placed under surveillance and permits only as a privilege or franchise. For general discussion of this subject see: 2 Cooley's Constitutional Limitations (8th Ed.), p. 1306; Black's Constitutional Law (2d Ed.), pp. 352-354; 6 Ruling Case Law, p. 217.

In numerous cases there has been upheld the right of a state to impose a time-period of residence for an individual as a condition precedent to his right to receive a certain privilege from the state. Illustrative of this line: *De Grazier* v. *Stephens,* 101 Tex. 194, 105 S. W. 992, 16 L. R. A. (N. S.) 1033, 16 Ann. Cas. 1059; *Premier-Pabst Sales Co.* v. *Grosscup,* 298 U. S. 226, 56 S. Ct. 754, 80 L. Ed. 1155; *La Tourette* v. *McMaster,* 248 U. S. 465, 39 S. Ct. 160, 63 L. Ed. 362.

Section 2, Article 4 of the Constitution of the United States provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." The fourteenth amendment carries the provision: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." The purpose of the quoted language of the fourteenth amendment is to protect citizenship of the United States as distinguished from citizenship of the several states. *Duncan* v. *Missouri,* 152 U. S. 377, 382, 14 S. Ct. 570, 38 L. Ed. 485; *Maxwell* v. *Dow,* 176 U. S. 581, 587, 20 S. Ct. 494, 44 L. Ed. 597. This clause of the amendment does not confer new rights, but it furnishes additional guaranty against encroachment by the states on those fundamental rights which belong to citizenship. *In re Kemmler,* 136 U. S. 436, 448, 10 S. Ct. 930, 34 L. Ed. 519; *Bartemeyer* v. *Iowa,* 18 Wall. (U. S.) 129, 133, 21 L. Ed. 929. Consult: 11 Corpus Juris, p. 802. Under the present discussion, therefore, it is necessary to consider only the privileges and immunities provision of Section 2, Article 4 of the Federal Constitution.

Of the underlying purpose of this provision of the Constitution, the Supreme Court of the United States, in

*Paul* v. *Virginia,* 8 Wall. 168, 180, 19 L. Ed. 357, said: "It was undoubtedly the object of the clause in question to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other States; it gives them the right of free ingress into other States, and egress from them; it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other States the equal protection of their laws." It has been further stated by the Supreme Court of the United States that the sole purpose of the quoted constitutional provision "was to declare to the several States, that whatever those rights, as you grant or establish them to your own citizens, or as you limit or qualify, or impose restrictions on their exercise, the same, neither more nor less, shall be the measure of the rights of citizens of other States within your jurisdiction." *Blake* v. *McClung,* 172 U. S. 239, 252, 19 S. Ct. 165, 170, 43 L. Ed. 432. The *Blake* case is authority for the further proposition that a state, in establishing regulations for the conduct of business within its bounds, may not give to its own citizens essential privileges connected with that business which it denies to citizens of other states. For further amplification of these principles consult *Canadian Northern Ry. Co.* v. *Eggen,* 252 U. S. 553, 40 S. Ct. 402, 64 L. Ed. 713.

The effect of the statutory limitation of which the relator complains is to deny a license as beer distributor to all individuals who have not been *bona fide* residents of the state for four years. The regulation applies equally to citizens of West Virginia and citizens of other states. A West Virginia citizen residing beyond the state is not eligible, neither is a citizen of the state who has not resided therein continuously for four years. There is no feature of the regulation which operates on citizens of other states in a different manner from that in which

it operates on West Virginia citizens. Under this regulation citizens of other states are entitled to exactly the same privileges and immunities as are citizens of West Virginia. Therefore, the statute involves no violation of the federal constitutional provision which the relator invokes.

Under the principles stated the writ must be refused.

*Writ refused.*