305 S.E.2d 285

**STATE of West Virginia ex rel. Helen STEELE, James Ernest Atkins, et al., etc.**

v.

**Donald L. KOPP, Clerk, etc.**

No. 15907.

Supreme Court of Appeals of West Virginia.

June 29, 1983.

George G. Guthrie & David D. Johnson, III, Spilman, Thomas, Battle & Klostermeyer, Charleston, for relators.

Chauncey H. Browning, Atty. Gen. and Victor A. Barone, Deputy Atty. Gen., Charleston, Marianne K. Hoover, Asst. Atty. Gen., Jack M. McCarty, Charleston, for respondent.

McHUGH, Justice:

This action is before this Court upon a petition in mandamus seeking publication of the West Virginia budget bill for fiscal year 1983–84 as enacted by the West Virginia Legislature and without budgetary reductions by the governor relating to the West Virginia nonintoxicating beer commissioner. By order entered on June 7, 1983, this Court issued a rule directing the respondent, Donald L. Kopp, to show cause why relief should not be awarded against him. By order entered on June 14, 1983, this Court granted the motion to intervene of John D. Rockefeller IV, Governor of the State of West Virginia. This Court has before it the petition, the response and demurrer of the respondent, the intervenor's response, all matters of record and the briefs of counsel.

Article 16 of chapter 11 of the West Virginia Code is known as "The Nonintoxicating Beer Act." *W.Va.Code*, 11–16–1 et seq. [1937]. That act provides, *inter alia*, that "[n]o person shall manufacture, sell, possess for sale, transport or distribute nonintoxicating beer except in accordance with the provisions of this article, and after first obtaining a state license therefor...." *W.Va.Code*, 11–16–3 [1980]. Pursuant to *W.Va.Code*, 11–16–18 [1951], the administration of the act is vested in the West Virginia nonintoxicating beer commissioner. To aid the commissioner in his or her duties, *W.Va.Code*, 11–16–18 [1951], provides the commissioner with a deputy and agents. The petitioners assert that they are citizens and taxpayers of West Virginia and agents of the nonintoxicating beer commissioner. They seek in this action to nullify the governor's reductions of funds appropriated by the legislature to the office of the commissioner.

Respondent, Donald L. Kopp, is the Clerk of the House of Delegates of the State of West Virginia. Pursuant to *W.Va.Code*, 4–1–13 [1931], the Clerk of the House of Delegates has the responsibility to "superintend the printing" of the acts and joint resolutions of the West Virginia Legislature. The petitioners ask this Court to require respondent Kopp to publish the state budget for fiscal year 1983–84 without the reductions made by the governor with respect to the office of the nonintoxicating beer commissioner.

As the petition indicates, the budget submitted by the governor to the West Virginia legislature during its 1983 Regular Session called for an elimination of funding for the office of the nonintoxicating beer commissioner. Specifically, the budget submitted by the governor to the legislature stated that "[i]t is recommended that the administrative functions and responsibilities of the West Virginia Nonintoxicating Beer Commission be transferred to the Office of the Alcohol Beverage Control Commissioner." However, during the 1983 Regular Session of the Legislature, bills providing for the abolition of the office of nonintoxicating beer commissioner failed to be enacted into law.

On March 16, 1983, the last day of its regular session, the legislature passed Enrolled Committee Substitute for House Bill No. 1150, the budget bill. That budget bill, applicable to fiscal year 1983–84, contained Account No. 4900, entitled "West Virginia Nonintoxicating Beer Commissioner."

Account No. 4900, as passed by the legislature, contained an appropriation of $392,294 for the nonintoxicating beer commissioner. That appropriation included $305,777 for personal services; $86,217 for current expenses and $300 for equipment.

Later that day, March 16, 1983, the legislature adjourned *sine die.* The budget bill was subsequently presented to the governor. *W.Va. Const.,* art. VI, § 51D(11). The governor thereafter filed in the office of the West Virginia Secretary of State (1) the budget bill, which indicated that the governor had reduced appropriations relating to Account No. 4900, and (2) a letter from the governor dated March 21, 1983, to the secretary of state concerning, *inter alia,* the governor's reductions of appropriations for Account No. 4900.

With respect to that account, the governor in the margin of the budget bill changed the appropriation of $392,294 for the "West Virginia Nonintoxicating Beer Commissioner" to $78,125. Specifically, that account, as changed by the governor, included $28,125 for personal services; $50,000 for current expenses and zero for equipment.

The March 21, 1983, letter of the governor, filed with the budget bill in the office of the secretary of state contained the following statements concerning Account No. 4900:

I have reduced line 1, Personal Services, and line 2, Current Expenses; struck line 3, Equipment; and reduced line 4, Total, accordingly.

I have reduced the level of appropriation to the Beer Commission to what I believe to be the legally acceptable minimum. The functions of the Beer Commission can be performed by the Alcohol Beverage Control Commission, at minimal additional cost to the taxpayers. I have left only the amount of the Commissioner's salary in the Personal Services line, becuase it is a statutory position with a statutory salary; and the Current Expenses line has been reduced to the maximum amount which may be necessary to provide reimbursement to the Alcohol Beverage Control Commission for duties performed.

The time has come for us to avoid duplication of services and unnecessary bureaucracy in government wherever possible. Nowhere is this more evident than in the operation of two separate agencies to inspect and oversee the sale of beer, wine and liquor. I believe that the consolidation of duties which will be necessary because of the above reductions will finally demonstrate the need to abolish the Beer Commission by statute.[1]

The petitioners assert that the regulation of nonintoxicating beer in this State is essentially a legislative function as reflected by the provisions of *W.Va.Code,* 11–16–18 [1951], which statute established the office of the West Virginia nonintoxicating beer commissioner. Thus, the petitioners contend that, inasmuch as the action of the governor in substantially reducing the legislative appropriations for the commission-

---

1.  *W.Va.Code,* 6–7–2a [1981], provides that the annual salary of the non-intoxicating beer commissioner shall be $28,125.

er's office for fiscal year 1983–84 effectively eliminated the function of the commissioner's office, the governor's action violated *W.Va. Const.*, art. V, § 1, concerning the separation of legislative, executive and judicial powers in this State, and *W.Va. Const.*, art. VI, § 51, concerning this State's budgetary process. The petitioners further contend that, inasmuch as the governor's letter of March 21, 1983, purports to transfer to the office of the West Virginia alcohol beverage control commissioner funds appropriated by the legislature to the West Virginia nonintoxicating beer commissioner, the governor's actions are contrary to the provisions of *W.Va.Code*, 5A–2–19 [1976].[2] Finally, the petitioners contend that the budget bill, containing the governor's reductions of appropriations for Account No. 4900, was not timely filed in the office of the secretary of state, and therefore the reductions are of no force and effect.

The principal conflict in this action is between the petitioners and the intervenor, the governor. Respondent Kopp asks this Court to inform him "of the authentic and official form of the Budget Act of this State...."

The governor asserts that he did not insert appropriations for Account No. 4900, relating to the office of the nonintoxicating beer commissioner, into the budget bill prepared by him and submitted to the legislature during its 1983 Regular Session. Therefore, the governor contends that the legislature had no authority to insert into the budget bill appropriations for the office of the nonintoxicating beer commissioner. Specifically, the governor contends that, because no funds for that office were included in the budget bill the governor submitted to the legislature, the legislature could only have funded the office of the nonintoxicating beer commissioner by way of a supplementary appropriation bill, which the legislature failed to do. Furthermore, the governor contends that (1) he had the authority to reduce the legislative appropriations for the office of the nonintoxicating beer commissioner, (2) he made no transfer of those appropriations to the office of the alcohol beverage control commissioner and (3) after the legislature adjourned, he timely filed the budget bill in the office of the secretary of state.

We are of the opinion that the issue of whether the legislature improperly inserted into the budget bill, submitted to it by the governor, appropriations for the nonintoxicating beer commissioner and the issue concerning the authority of the governor to subsequently make the reductions in question are dispositive of this action. Therefore, we need not address the issue of the alleged transfer of appropriations by the governor from the office of the nonintoxicating beer commissioner to the alcohol beverage control commissioner or the issue of whether the budget bill was timely filed by the governor in the office of the secretary of state.[3]

---

**2.** *W.Va.Code*, 5A–2–19 [1976], provides as follows:

Notwithstanding any other provision of law to the contrary, there shall be no transfer of amounts between items of appropriations nor shall moneys appropriated for any particular purpose be expended for any other purpose by any spending unit of the executive, legislative or judicial branch except as hereinafter provided:

(1) Any transfer of amounts between items of appropriations for the executive branch of state government shall be made only as specifically authorized by the legislature.

(2) Any transfer of amounts between items of appropriations for the legislative branch of state government shall be made only pursuant to the joint rules adopted by such body and any amendments thereto, as certified to the state auditor, the state treasurer and the legislative auditor.

(3) Any transfer of amounts between items of appropriations for the judicial branch of state government shall be made only pursuant to rules adopted by the supreme court of appeals and any amendments thereto, as certified to the state auditor, the state treasurer and the legislative auditor.

**3.** The petitioners and the governor are in direct conflict upon the issue of whether the budget bill containing the reductions was, pursuant to *W.Va. Const.*, art. VI, § 51D(11), timely filed in the office of the secretary of state by the governor subsequent to the March 16, 1983, adjournment of the legislature. The petitioners assert that, inasmuch as the governor failed to timely file the budget bill, the governor's reductions of appropriations for the office of the West Virginia nonintoxicating beer commissioner are of

## I
## THE BUDGET BILL SUBMITTED BY THE GOVERNOR

█ As this Court has recognized, the West Virginia legislature has the authority to regulate nonintoxicating beer in this State.

This Court in *Hinebaugh v. James*, 119 W.Va. 162, 192 S.E. 177 (1937), a mandamus proceeding, held, under prior statutory requirements, that the relator failed to establish his eligibility for a West Virginia license as a distributor of nonintoxicating beer. In so holding, this Court stated as follows:

> [W]e entertain no doubt that the legislature may set up such system of beer regulation as it may deem proper, within the Constitution. And such regulation may apply to distribution as well as to manufacturing and retailing. The situation is so closely analogous to the traffic in hard liquor, as to the regulation whereof under the police power there can be no doubt, that the propriety of strictly circumscribing the beer business seems obviously proper. Such a matter is essentially for legislative determination.

119 W.Va. at 164, 192 S.E. at 178.

Accordingly, the legislature enacted "The Nonintoxicating Beer Act." *See W.Va.Code*, 11–16–1 et seq. [1937]. The provision of that act most relevant to this action is *W.Va.Code*, 11–16–18 [1951]. Pursuant to section 18, the legislature established the "office of an independent administrator" known as the West Virginia nonintoxicating beer commissioner. Furthermore, that section provides the commissioner with a deputy commissioner and agents, and section 18 outlines their duties. *W.Va.Code*, 11–16–18 [1951], provides, in part, as follows: [4]

> (a) The office of an independent administrator to be known as "West Virginia nonintoxicating beer commissioner"

is hereby created and the administration of this article is vested in and shall be exercised by said commissioner, to whom is hereby given all necessary power and authority in the premises.

> . . . .

> The commissioner shall be appointed by the governor with the advice and consent of the senate.

> . . . .

> (c) The commissioner, with the consent of the governor, shall appoint a deputy commissioner. . . . The deputy commissioner in the absence of the commissioner shall exercise all the powers of the commissioner and generally shall exercise such powers as are delegated to him by the commissioner.

> . . . .

> (e) In addition to the service of the deputy commissioner hereinabove provided for, the commissioner shall appoint an adequate number of competent persons to serve as agents of the commissioner for the purpose of keeping all necessary accounts and records required under the provisions of this article; investigating the books, accounts, records and other papers of retailers, distributors and brewers; investigating applicants for license and the places of business of retailers, distributors and brewers; procuring evidence with respect to violations of the provisions of this article, and particularly for use at hearings held by the commissioner and on proceedings instituted in court for the purpose of revoking or suspending licenses hereunder; and such agents shall perform such other duties as the commissioner may direct. Such agents shall have the right to enter any licensed premises in the State in the performance of their duties at any hour of the day or night when beer is being sold or consumed on such licensed premises.

no force and effect. We need not resolve this issue. *See Jones v. Rockefeller*, 172 W.Va. 30, 303 S.E.2d 668 (1983).

**4.** *W.Va. Const.*, art. IV, § 8, provides as follows: "The legislature, in cases not provided for in

this Constitution, shall prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed."

■ Contrary to the authority of the legislature to regulate nonintoxicating beer in this State, and the provisions of *W. Va. Code*, 11–16–18 [1951], pursuant to which statute the office of the nonintoxicating beer commissioner has existed for a number of years, the governor submitted to the legislature during its 1983 Regular Session a proposed budget for fiscal year 1983–84 containing Account No. 4900 for the nonintoxicating beer commissioner without a request by the governor for appropriations for the commissioner's office.[5] We conclude, however, that the budget, as submitted by the governor, violated the constitution of this State. We further conclude that, under the circumstances of this action, the legislature during its 1983 Regular Session was authorized, regardless of the failure of the governor to recommend funding for the office of the commissioner, to make appropriations for the office of the commissioner, as reflected by the legislative appropriations under Account No. 4900.

As we stated in *Jones v. Rockefeller*, 172 W.Va. 30, 303 S.E.2d 668 (1983), article VI, § 51, of the Constitution of West Virginia outlines the procedure to be followed for the making of the annual budget for the state government of West Virginia. That constitutional provision is known as the "Modern Budget Amendment."[6] Subsection B(2) of section 51 states that the governor "shall submit to the legislature a budget for the next ensuing fiscal year." Subsection B further provides, in part, as follows:[7]

(3) Each budget shall embrace an itemized estimate of the appropriations, in such form and detail as the governor shall determine or as may be prescribed by law: (a) For the legislature as certified to the governor in the manner hereinafter provided; (b) for the executive department; (c) for the judiciary department, as provided by law, certified to the governor by the auditor; (d) for payment and discharge of the principal and interest of any debt of the State created in conformity with the Constitution, and all laws enacted in pursuance thereof; (e) for the salaries payable by the State under the Constitution and laws of the State; (f) for such other purposes as are set forth in the Constitution and in laws made in pursuance thereof.

(4) The governor shall deliver to the presiding officer of each house the budget and a bill for all the proposed appropriations of the budget clearly itemized and classified, in such form and detail as the governor shall determine or as may be prescribed by law....

(5) The legislature shall not amend the budget bill so as to create a deficit but may amend the bill by increasing or decreasing any item therein....

It should be noted that subsection B of section 51 further provides that the governor may "with the consent of the legislature, before final action thereon by the legislature, amend or supplement the budget...." However, there is nothing in the record in this action to indicate that an

---

**5.** Although the budget bill submitted by the governor to the legislature during its 1983 Regular Session contained a recommendation that nothing be appropriated for the office of the West Virginia nonintoxicating beer commissioner for fiscal year 1983–84, the idea of terminating all funding for the office of the commissioner was apparently abandoned by the governor, as indicated by the action the governor took concerning the budget bill ultimately passed by the legislature on March 16, 1983.

With respect to the budget passed by the legislature, the governor permitted $78,125 to remain in Account No. 4900, the nonintoxicating beer commissioner's account. In his letter dated March 21, 1983, and filed by the governor with the budget in the office of the secretary of state, the governor indicated that $78,125 was the "legally acceptable minimum" appropriation

for the commissioner. In that letter, the governor further indicated that part of the $78,125 was for the commissioner's statutory salary and the remainder of the $78,125 "may be necessary to provide reimbursement to the Alcohol Beverage Control Commissioner for duties performed."

**6.** For a statement of the history of the Modern Budget Amendment, see *State ex rel. Browning v. Blankenship*, 154 W.Va. 253, 259, 175 S.E.2d 172, 176 (1970).

**7.** It should be noted that the governor has the constitutional power to require information from state officials for the purpose of making this State's annual budget, and, in that regard, the governor may provide for public hearings. *W. Va. Const.*, art. VI, § 51D(9) and (10).

amendment or supplement to the budget with respect to the nonintoxicating beer commissioner was proposed or made by the governor prior to the enactment of the budget on March 16, 1983.

■ It is clear that *W.Va. Const.*, art. VI, § 51, contemplates a budget for legislative consideration, not simply as determined by the governor, but "as may be prescribed by law" for such purposes "as are set forth in the Constitution and in laws made in pursuance thereof." Therefore, inasmuch as the regulation of nonintoxicating beer in this State is "essentially for legislative determination," *Hinebaugh, supra,* and the legislature chose to regulate nonintoxicating beer through the creation of the office of the nonintoxicating beer commissioner under "The Nonintoxicating Beer Act," the governor had a duty to submit a budget to the legislature under which the office of the commissioner could continue operations as prescribed by law.[8] The governor did not fulfill that duty, as reflected in the proposed budget he submitted which did not request funding for the office of the commissioner.

## II

### THE BUDGET ACT AS PASSED BY THE LEGISLATURE AND PRESENTED TO THE GOVERNOR

In spite of the failure of the governor to request that the office of the nonintoxicating beer commissioner receive appropriations for fiscal year 1983–84, the legislature, in the budget bill enacted on March 16, 1983, appropriated a total amount of $392,294 for Account No. 4900, the office of the commissioner. As indicated above, that appropriation was reduced by the governor to $78,125 which, the governor indicated, included $28,125 for the nonintoxicating beer commissioner's salary and $50,000 "which may be necessary to provide reimbursement to the Alcohol Beverage Control Commission." For reasons comparable to those stated in part I of this opinion concerning the authority of the legislature to regulate nonintoxicating beer in this State, we are of the opinion that the action of the governor in reducing the legislative appropriations for the office of the nonintoxicating beer commissioner to a level which effectively eliminates the function of that office violates the constitution of this State.

In *State ex rel. Brotherton v. Blankenship*, 157 W.Va. 100, 207 S.E.2d 421 (1973), the governor, after enactment by the legislature of the budget bill for fiscal year 1973–74, approved appropriations in that bill for the salary of the state treasurer and for the salary of the secretary of state but reduced all other appropriations for those offices to zero. Noting that the governor's action in reducing those appropriations effectively eliminated the function of the offices of the state treasurer and secretary of state, this Court held the governor's action to be void and restored to the budget the appropriations enacted by the legislature for those offices. In syllabus point 7, this Court held as follows:

> Although the Governor is authorized under the provisions of Article 6, Section 51, Subsection D(11) to disapprove or reduce items or parts of items contained in the Budget Bill pertaining to the executive department, where he reduces the funds in the budget of a constitutional officer to zero, thereby effectively eliminating the function of his office, the Governor's action constitutes a clear abuse of discretion and will not be permitted.

■ We recognize that *State ex rel. Brotherton* is different from the action before this Court in that in *State ex rel. Brotherton* the offices in question were established by the Constitution of this State and that the office in question in this action was established by statute. However, the point to be made is that in *State ex rel. Brotherton* and in this action the governor stepped beyond his sphere of lawful authority. This Court held in syllabus

---

**8.** Stating that "a legislative mandate is not to be ignored ...," this Court in *DeVault v. Nicholson,* 170 W.Va. 719, 296 S.E.2d 682 (1982), held in the syllabus point as follows: "Where a wom- en's prison has been created by a legislative act, *W.Va.Code,* 28–5C–1 [1947] *et seq.,* a legislative act is required to close it."

point 6 of *State ex rel. Brotherton* as follows:

> Although the discretion vested in the Governor respecting his official duties is not subject to control or review by the courts so long as his actions fall within the sphere of his lawful authority, when he clearly abuses his discretion it is the duty of the courts to review his actions and prevent such abuse.

Specifically, as more fully outlined below, in this action the governor, by way of the budgetary process, violated the Constitution of this State with respect to the authority of the legislature to regulate nonintoxicating beer through the office of the nonintoxicating beer commissioner.

Nor may it be asserted that, because the governor left $78,125 in Account No. 4900, the office of the nonintoxicating beer commissioner was not effectively eliminated. The language of *State ex rel. Brotherton* is particularly appropriate:

> There can be no merit to the averment that because the salaries of the Treasurer and Secretary of State were allowed to remain in the budget act, such offices were not abolished. It would defy reality and reason to say that either of those officers could conduct the business of such offices, as intended by the people, without any funds with which to operate and personnel to assist them.

157 W.Va. at 120, 207 S.E.2d at 433.

As we recognized in *Hinebaugh, supra,* the regulation of nonintoxicating beer in this State is a legislative function, and the legislature exercised its authority in this area by the enactment of The Nonintoxicating Beer Act and, specifically, by the creation of the office of the nonintoxicating beer commissioner. *W.Va.Code,* 11–16–18 [1951]. The governor's actions with re-

spect to the commissioner intrude into that legislative authority. Consequently, this State's constitutional provision concerning separation of powers is called into question.

## III

### SEPARATION OF POWERS

This State's commitment to the concept of separation of powers in government is represented by the provisions of *W.Va. Const.,* art. V, § 1. As that provision states:

> The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature.

In *State ex rel. Brotherton, supra,* and in a subsequent action with the same style, i.e., *State ex rel. Brotherton v. Blankenship,* 158 W.Va. 390, 214 S.E.2d 467 (1975), we indicated that in actions involving the budget making process under *W.Va. Const.,* art. VI, § 51, the provisions of *W.Va. Const.,* art. V, § 1, concerning separation of powers, may also be involved.[9] In the 1975 *Brotherton* action, in which action this Court was again asked to review certain actions of the governor concerning the budget making process, we stated as follows:

> The system of "checks and balances" provided for in American state and federal constitutions and secured to each branch of government by "Separation of Powers" clauses theoretically and practically compels courts, when called upon, to thwart any unlawful actions of one branch of government which impair the

---

9. In the 1973 *Brotherton* action, we stated as follows:

> We are fully cognizant of the language contained in paragraph (13) of Section 51 which reads, in part, 'In the event of any inconsistency between any of the provisions of this section and any of the other provisions of the Constitution, the provisions of this section shall prevail.' We are also aware of the intervenor's contention that by reason of the im-

mediately above quoted language, Section 51 prevails over Article 5, Section 1, which provides for the separation of powers. We do not agree, however, that in an endeavor to ascertain the intent of Section 51, the Court is precluded from considering the provisions of Article 5, Section 1 of our Constitution or any other provisions of that instrument.

157 W.Va. at 110–11, 207 S.E.2d at 428.

constitutional responsibilities and functions of a coequal branch.

158 W.Va. at 402, 214 S.E.2d at 477.

As we have indicated above, the actions of the governor with respect to Account No. 4900 concerning the nonintoxicating beer commissioner, threaten to erode legislative authority to regulate nonintoxicating beer in this State.

■ As we recently indicated in *Jones v. Rockefeller*, 172 W.Va. 30, 303 S.E.2d 668 (1983), this Court does not approach with enthusiasm disputes between the legislative and executive branches concerning budgetary matters. However, the role of this Court is vital to the preservation of the constitutional separation of powers of government where that separation, delicate under normal conditions, is jeopardized by the usurpatory actions of the executive or legislative branches of government. In seeking to reaffirm in various cases the principles of our state constitution and other rules of law, it may be said that this Court, as well as the other two branches of government, represents the people.[10]

Although efficiency in government is a desirable goal, efficiency must be achieved within constitutional constraints. There is no question that if the actions of the governor in this matter were upheld, the office of the West Virginia nonintoxicating beer commissioner would be effectively eliminated. Upon the record presented to us, the actions of the governor clearly invaded the province of the legislature, and similar actions by a governor in the future could improperly alter the structure of this State's government, to the detriment of *W.Va. Const.*, art. V, § 1, our provision concerning the separation of powers.[11]

■ As we held in syllabus point 1 of *State ex rel. Barker v. Manchin*, 167 W.Va. 155, 279 S.E.2d 622 (1981):

Article V, section 1 of the Constitution of West Virginia which prohibits any one department of our state government from exercising the powers of the others, is not merely a suggestion; it is part of the fundamental law of our State and, as such, it must be strictly construed and closely followed.

■ Upon all of the above, we hold that where the West Virginia legislature pursuant to its authority to regulate nonintoxicating beer in this State created, under the Nonintoxicating Beer Act, the office of the West Virginia nonintoxicating beer commissioner, and the statute creating that office provided a deputy commissioner and employees or agents to aid the commissioner in his or her duties, and where (1) the governor submitted a proposed budget for fiscal year 1983–84 to the legislature during its Regular Session in which the governor did not request appropriations for the office of the nonintoxicating beer commis-

10. In *McConaughy v. Secretary of State*, 106 Minn. 392, 119 N.W. 408 (1909), the Supreme Court of Minnesota stated as follows:

The Governor may exercise the powers delegated to him, free from judicial control, so long as he observes the laws and acts within the limits of the power conferred. His discretionary acts cannot be controllable, not primarily because they are of a political nature, but because the Constitution and laws have placed the particular matter under his control. But every officer under a constitutional government must act according to law and subject to its restrictions, and every departure therefrom or disregard thereof must subject him to the restraining and controlling power of the people, acting through the agency of the judiciary; for it must be remembered that the people act through the courts, as well as through the executive or the Legislature. One department is just as representative as the other, and the judiciary is the department which is charged with the special duty of determining the limitations which the law places upon all official action.
106 Minn. at 415–16, 119 N.W. at 417.

11. We stated in *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981) that:

Our Constitution does not permit executive officers to pick and choose the laws they will or will not execute, for if such were the case, the executive department could, either by commission or omission, model a system of law different than that specified by the people acting through the Legislature. So long as a legislative enactment as law exists, the executive department has the constitutional duty to attend to its faithful execution.
171 W.Va. at 253, 298 S.E.2d at 789.

Furthermore, as *W.Va. Const.*, art. VII, § 5, provides: "The chief executive power shall be vested in the governor, who shall take care that the laws be faithfully executed."

sioner, and (2) upon presentation to the governor of the budget bill as passed by the legislature, the governor effectively eliminated the functions of the office of the nonintoxicating beer commissioner by reducing legislative appropriations for that office to zero, except for the commissioner's salary and $50,000, the actions of the governor violated *W.Va. Const.*, art. V, § 1, concerning the separation of powers of government in this State, and *W.Va. Const.*, art. VI, § 51, concerning this State's annual budgetary process.

Accordingly, for the reasons set forth in this opinion, Account No. 4900, entitled "West Virginia Nonintoxicating Beer Commissioner," contained within the budget bill for fiscal year 1983–84, shall be published as enacted by the legislature.

Writ granted as moulded.