**FILED**

**October 11, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 15-0543 – *State of West Virginia v. David K.*

WORKMAN, Justice, joined by LOUGHRY, Justice, concurring, in part, and dissenting, in part:

I concur with the decision to affirm the petitioner's convictions, but vehemently dissent with the manner in which the holding is reached. Ultimately, this case requires the Court to determine whether the petitioner's rights under the Confrontation Clause – set forth in the Sixth Amendment to the United States Constitution and in section 14 of article III of the West Virginia Constitution – were violated.[1] In so doing, the majority has made an error of constitutional magnitude in permitting the legislative branch of government to define the parameters of constitutionality. The majority compounds this error by failing to reiterate the long-standing principle that it is the sole prerogative of the Supreme Court of Appeals to determine issues relating to the admissibility of evidence and substantive judicial

---

[1] The Sixth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, provides in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const., Am. VI. The United States Supreme Court has recognized that a primary objective of the Confrontation Clause is to compel a witness to "stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. U.S.,* 156 U.S. 237, 242-243 (1895). The right of confrontation "is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Barber v. Page,* 390 U.S. 719, 721 (1968) (quotation marks and citation omitted).

1

procedure. The majority "lay[s] waste [their] powers . . . like lemmings running headlong to the sea . . . oblivious,"[2] blithely relinquishing inherent judicial authority to the legislative branch. They also demonstrate an incredible lack of sensitivity to child sexual assault victims; they vitiate almost thirty years of West Virginia jurisprudence that has demonstrated compassion and understanding of the unique challenges facing child victims, especially in the context of a child facing a sexual predator, while still protecting a defendant's rights.

The issue before the Court is whether the trial court's use of closed-circuit television to present the testimony of a child victim violated the Confrontation Clause. The required elements of the Confrontation Clause are: 1) physical presence, 2) an oath, 3) cross-examination, and 4) "observation of demeanor by the trier of fact[.]" *Maryland v. Craig,* 497 U.S. 836, 846 (1990). The combined effect of these elements ensures "that evidence admitted against an accused is reliable and subject to . . . rigorous adversarial testing[.]" *Id*.

As pertains to the testimony of child abuse victims, the United States Supreme Court has also recognized, however, that the right of the accused to meet witnesses face-to-face is not absolute and the Confrontation Clause simply "'reflects a

---

[2] William Wordsworth, The World is Too Much With Us (1807), JOHN BARTLETT, BARTLETT'S FAMILIAR QUOTATIONS, 394 (17th ed. 2002).

*preference* for face-to-face confrontation at trial.'" *Craig*, 497 U.S. at 849 (citation omitted). This preference, however, "'must occasionally give way to considerations of public policy and the necessities of the case.'" *Id.* (quoting *Mattox*, 156 U.S. at 243). In *Craig*, the Court held that allowing the testimony of a child witness, who was alleged to be a victim of abuse, by way of one-way, closed circuit television did not violate the defendant's right of confrontation because the procedure adequately protected the other elements of the Confrontation Clause: the oath, the cross-examination, and the ability of the trier of fact to view the demeanor of the witness. The Court made clear, however, that this procedure may only be used if: 1) the trial court ensured that the testimony via a two-way medium was reliable, 2) the court's denial of the defendant's right to confront the witness in person furthered an important public policy, and 3) the court made a sufficient finding of necessity. *Id.* at 855. The Court emphasized that "the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis, i.e.*, more than 'mere nervousness or excitement or some reluctance to testify.'" *Id.* at 856 (citation omitted). Significantly, the Court left this determination to the trial court.

The record in the instant case demonstrates the *Craig* requirements were plainly met, some implicitly, and the record supports the trial court's ultimate determination of necessity. From its vantage point, approximately three feet away from where the child witness was seated, the trial court found it was clear that the child was "becoming traumatized[.]" Therefore, the evidence established – in real time – the

likelihood that the child would suffer emotional harm if required to testify in the petitioner's physical presence.[3]  Furthermore, "[b]ecause there is no dispute that the child witness[] in this case testified under oath, [was] subject to full cross-examination, and [was] able to be observed by the judge, jury, and defendant as [she] testified," the majority should have concluded that "to the extent that a proper finding of necessity has

---

[3] The trial court did not make an express finding that the trauma resulted from the presence of the petitioner in the courtroom but it is fair to conclude from the appendix record before us that the child witness suffered from more than ordinary courtroom nervousness.  The victim appeared in open court initially, clutching her "cow pillow" for comfort, and answered some preliminary questions.  However, when the Assistant Prosecuting Attorney asked substantive questions about sexual contact with the petitioner, her step-father, the victim could give no response.  The trial court observed her demeanor, conducted an extremely sensitive colloquy with the child, had a hearing on the matter with counsel at the bench, and sought their suggestions on how to deal with the situation. Neither lawyer offered any suggestions. The court then found "this child is beginning to become . . . traumatized as a result of this[.]"  Furthermore, at the hearing held on the petitioner's post-trial motions, the Assistant Prosecuting Attorney stated that he did not observe it at the time of trial because his attention was directed to the victim, but he was advised later that the petitioner "was engaged in behavior which could have been interpreted" as intimidating to the victim.  For instance, during the entirety of the victim's testimony in open court, the petitioner was clasping his hands "as though praying, which reasonably the victim could assume was an intimidation to her."

Even assuming, arguendo, the *Craig* standards were not satisfied, the petitioner's Confrontation Clause argument still could not survive a harmless error analysis.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (holding Confrontation Clause error is subject to harmless-error analysis).  As the majority discusses, the State presented four different instances in which the petitioner confessed to sexually abusing the victim.  Furthermore, counsel for the petitioner conducted a full cross-examination of the victim and the jury had the opportunity to assess her testimony and demeanor during this cross-examination. *See Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) ("The main and essential purpose of confrontation is to *secure for the opponent the opportunity of cross-examination*.") (citation omitted).

been made, the admission of such testimony . . . [was] consonant with the Confrontation Clause." *Id.* at 857.

Instead, the majority glosses over the real constitutional inquiry established by the Supreme Court in *Craig,* and diminishes the significant role of the trial court in carrying out that inquiry. In so doing, it elevates the statute not only to the gold standard for a fair criminal trial, but indeed permits the legislative branch to define what is constitutional. The majority robotically lays out the substantive law the legislature seeks to dictate by statute --- rather than by Court rule or case law --- and adopts it wholesale in a series of new syllabus points. The requirements to satisfy the Confrontation Clause as set forth by the majority, adopted in their entirety from the statute, are far more expansive than those required by *Craig*. Unfortunately, the majority's holding is built not only on the faulty foundation that the Legislature can impose mandatory, non-discretionary evidentiary and substantive procedural requirements on trial courts, but indeed that it can supersede the United States Supreme Court in resolving constitutional issues. This approach creates alarming precedent:

> "[I]f there is a principle in our Constitution . . . more sacred than another," James Madison said on the floor of the First Congress, "it is that which separates the Legislative, Executive, and Judicial powers." 1 Annals of Cong. 581 (1789). A strong word, "sacred." Madison was the principal drafter of the Constitution, and he knew what he was talking about. By diffusing federal powers among three different branches, and by protecting each branch against incursions from the others, the Framers devised a structure of government that promotes both liberty and accountability.

5

*Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1954 (2015) (Roberts, C.J., dissenting).

A defendant's right to a fair trial[4] is a substantive right grounded in our Constitution, not in statutory enactments. The protection of constitutional rights is the central function of the judicial branch, not the legislative branch. *See Trustees of Dartmouth College v. Woodward,* 17 U.S. 518, 625 (1819) ("On the judges of this court, then, is imposed the high and solemn duty of protecting, from even legislative violation, those [rights] which the constitution of our country has placed beyond legislative control; and, however irksome the task may be, this is a duty from which we dare not shrink."); *State v. Solomon*, 943 A.2d 819, 824 (N.H. 2008) ("The protection of constitutional rights is a core function of the judiciary.") (citation omitted); *U.S. v. Ghailani*, 686 F.Supp.2d 279, 290 (S.D.N.Y. 2009) ("Determining whether a person's constitutional rights have been violated and fashioning appropriate relief is a core, traditional function of American courts."). Accordingly, the majority's analysis should have focused on the petitioner's

---

[4] Justice Black, writing for the Court, identified these rights as among the minimum essentials of a fair trial:

> A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense – a right to his day in court – are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.

*In re Oliver*, 333 U.S. 257, 273 (1948).

rights under the Confrontation Clause, rather than a mechanical application of West Virginia Code §§ 62-6B-1 to -4.

The rationale employed in *People v. Rose*, 808 N.W.2d. 301 (Mich. Ct. App. 2010), illustrates the proper analysis. In *Rose*, the court affirmed the defendant's conviction of first-degree criminal sexual conduct and disseminating sexually explicit matter to a minor. The court rejected the defendant's argument that the trial court's decision to permit the eight-year-old victim to testify using a one-way witness screen was reversible error because the state statute did not specifically permit the use of witness screens. The court in *Rose* recognized that the relevant inquiry was not whether the statute was violated, but whether the trial court's decision to use a witness screen violated the defendant's Sixth Amendment right to confront the witness. *Id*. at 310. The court explained that

> while trial courts may rely on [the statute] to afford witnesses certain protections, the existence of this statute does not preclude trial courts from using alternative procedures permitted by law or court rule to protect witnesses. And trial courts have long had the inherent authority to control their courtrooms, which includes the authority to control the mode and order by which witnesses are interrogated. MRE 611(a); *People v. Banks,* 249 Mich.App. 247, 256, 642 N.W.2d 351 (2002) ("It is well settled in Michigan that a trial court has broad discretion in controlling the course of a trial."). This inherent authority also includes the ability to employ procedures that limit a defendant's right to confront his accusers face to face even when the provisions of [the statute] do not apply[.]

*Id*.

7

The majority also ignores an ample, well-developed body of West Virginia law that holds it is the Court's role, not the Legislature's, to make determinations on evidentiary issues and substantive judicial procedure, and *eagerly gives slavish devotion to the authority of the Legislature with regard to evidentiary issues and criminal courtroom procedures.* However, "[t]he efficient administration of the judicial system is essential to our duty to implement justice in West Virginia; and, therefore, we must be wary of any legislation that undercuts the power of the judiciary to meet its constitutional obligations." *State ex rel. Frazier v. Meadows,* 193 W.Va. 20, 25, 454 S.E.2d 65, 70 (1994). Moreover, "the role of this Court is vital to the preservation of the constitutional separation of powers of government where that separation, delicate under normal conditions, is jeopardized by the usurpatory actions of the executive or legislative branches of government." *State ex rel. Steele v. Kopp,* 172 W.Va. 329, 337, 305 S.E.2d 285, 293 (1983).

One of our leading cases addressing the authority of the judicial branch is *Mayhorn v. Logan Medical Foundation,* 193 W.Va. 42, 454 S.E.2d 87 (1994). *Mayhorn* was a medical malpractice action against an emergency room physician and hospital. In the cross-assignment of error before this Court, the defendants argued that the trial court should not have allowed the plaintiff's expert to testify because he did not qualify as an expert under West Virginia Code § 55-7B-7 (1986). That statute provided, in relevant part, that "expert testimony may only be admitted in evidence if the foundation, therefor, is first laid establishing that: . . . (e) *such expert is engaged or qualified in the same or*

8

*substantially similar medical field as the defendant health care provider.*" *Id.* (emphasis added). This Court repudiated the legislative enactment that purported to set forth criteria for assessing the qualifications of a standard of care expert and held that Rule 702 of the West Virginia Rules of Evidence remained the paramount authority for determining whether an expert is qualified to give an opinion. *Id.* at Syl. Pt. 6. We explained that

> [t]his Court has complete authority to determine an expert's qualifications pursuant to its constitutional rule-making authority. *See W.Va. Const.* art. VIII, § 3 (which states, in relevant part, that the Supreme Court of Appeals of West Virginia "shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to writs, warrants, process practice and procedure, which shall have the force and effect of law.") and syllabus point 1, *Bennett v. Warner,* 179 W.Va. 742, 372 S.E.2d 920 (1988) ("Under article [VIII], section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law.") *See also* Cleckley, [2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* (3rd ed. 1994)] § 7–2(A)(1), at 30. Additionally, this Court recently held that "[t]he West Virginia Rules of Evidence remain the paramount authority in determining the admissibility of evidence in circuit courts. These rules constitute more than a mere refinement of common law evidentiary rules, they are a comprehensive reformulation of them." Syl. pt. 7, *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994). *See also Teter v. Old Colony Co.,* 190 W.Va. 711, 724, 441 S.E.2d 728, 741 (1994).

*Mayhorn,* 193 W.Va. at 49, 454 S.E.2d at 94.

Writing for the Court, Justice Davis in *Louk v. Cormier*, 218 W.Va. 81, 622 S.E.2d 788 (2005), extended this principle by determining that legislative enactments

which imposed non-discretionary duties upon trial courts in actions filed under the Medical Professional Liability Act were unconstitutional as violative of the separation of powers doctrine. We held in syllabus point three of *Louk* that

> [t]he provisions contained in W. Va. Code § 55-7B-6d (2001) (Supp. 2004) were enacted in violation of the Separation of Powers Clause, Article V, § 1 of the West Virginia Constitution, insofar as the statute addresses procedural litigation matters that are regulated exclusively by this Court pursuant to the Rule-Making Clause, Article VIII, § 3 of the West Virginia Constitution. Consequently, W.Va. Code § 55-7B-6d, in its entirety, is unconstitutional and unenforceable.

*Id.* 218 W.Va. at 84, 622 S.E.2d at 791. The Court acknowledged that consistent with its actions therein, it had "historically invalidated statutes that conflicted with rules promulgated by this Court." *Id*. at 88, 622 S.E.2d at 795.

The decisions in *Mayhorn* and *Louk* are illustrative of this Court's established position that "the legislative branch of government cannot abridge the rule-making power of this Court." *In re Mann*, 151 W.Va. 644, 651, 154 S.E.2d 860, 864 (1967), *overruled on other grounds by Committee on Legal Ethics of W.Va. State Bar v. Boettner*, 183 W.Va. 136, 394 S.E.2d 735 (1990). Consistent with this precedent, the majority should have taken this opportunity to wholly reject the provisions of West Virginia Code § 62-6B-3(d) which invade judicial authority by purporting to establish a standard for expert testimony not consistent with our case law and expanding the requirements of the Confrontation Clause as set forth in *Craig*. Clearly, the statute at issue here conflicts with Rule 702 of the West Virginia Rules of Evidence. *See*

10

W.Va.R.Evid. 101 (providing, in part, that "Rules of evidence set forth in any West Virginia statute not in conflict with any of these rules or any other rules adopted by the Supreme Court of Appeals shall be deemed to be in effect *until superseded by the rule or decision of the Supreme Court of Appeals of West Virginia.*") (emphasis added). The instant case was the perfect opportunity to reiterate the longstanding and widely-accepted principle that the judicial branch has the inherent authority to determine constitutionality and make its own rules of procedure. Instead, the majority lies down and plays dead in its slavish devotion to the Legislature. Despite our precedent directing that the legislative branch of government cannot abridge the rule-making authority of this Court, the majority sanctions it to do just that.[5]

Likewise, courts elsewhere have not hesitated to reject legislative attempts to infringe on their rule-making authority. As articulately explained by the concurring justice in *In re Florida Rules of Criminal Procedure*, 272 So.2d 65, 66 (Fla.1972) (Adkins, J., concurring), the Court's exclusive rule-making province "encompass[es] the course, form, manner, means, method, mode, order, process or steps by which a party enforces substantive rights or obtains redress for their invasion. 'Practice and procedure'

---

[5] I am cognizant that this Court's case law and procedural rules specifically acknowledge the limited applicability of certain statutory provisions. *See e.g., Hechler v. Casey*, 175 W.Va. 434, 449 n.14, 333 S.E.2d 799, 815 n.14 (1985) ("This Court's procedural rule, to the extent it conflicts with the procedural statute, supersedes the statute."). However, the statute at issue herein directly affects both the standard for qualification as an expert and sets a peculiar rule different from any other type of case without justification.

11

may be described as the machinery of the judicial process as opposed to the product thereof." The substantive right at issue herein is the defendant's right to confrontation. West Virginia Code § 62-6B-3 plainly purports to prescribe the manner, means, and method by which that right is preserved as pertains to child witnesses. This is "a function with which the legislature may not meddle or interfere save as the Court may acquiesce and adopt for retention at judicial will." *Perin v. Peuler*, 130 N.W.2d 4, 10 (Mich. 1964) *modified by McDougall v. Schanz*, 597 N.W.2d 148 (Mich. 1999). As the Pennsylvania Supreme Court observed, "[t]he sole responsibility for the administration of the judicial system and all the procedural problems inherent therein devolves upon this Court. Consequently, it is not the legislators who are held accountable by the public for the efficient and orderly administration of the courts, but the judiciary itself." *Laudenberger v. Port Auth. of Allegheny Cty.*, 496 Pa. 52, 61, 436 A.2d 147, 152 (1981).

That West Virginia Code § 62-6B-1 to -4 is a statutory scheme prescribing *procedures* and the *evidentiary* basis upon which those procedures may be invoked is beyond cavil. The constitutional issue raised by the use of such procedure is the defendant's constitutional right to confrontation. It is the *sole* province of this Court to prescribe rules which ensure the protection of a defendant's constitutional rights. Moreover, subject to review *only* by this Court, it is the trial court's exclusive province to utilize its discretion to assess the necessity of and oversee the use of alternative procedures for the taking of child victim testimony. West Virginia Code § 62-6B-1 to -4 is an unmistakable invasion of the judiciary's province in this regard and must be rejected

12

by this Court just as courts elsewhere have done with similar legislative encroachments. *See Barsema v. Susong*, 751 P.2d 969, 974 (1988) ("Under the state constitution, we can[not] . . . allow the legislature to . . . substitute a different analytical framework or make special rules for a particular case, setting aside those evidentiary rules which over the centuries have been found necessary to ensure fair trials."); *State v. Mallard*, 40 S.W.3d 473, 483 (Tenn. 2001) ("[T]the legislature can have no constitutional authority to enact rules, either of evidence or otherwise, that strike at the very heart of a court's exercise of judicial power[.]"); *People v. Watkins*, 818 N.W.2d 296, 324–25 (Mich. 2012) ("'The legislature has no more right to break down the rules prescribed by this court to assure fundamental due process in criminal and civil trials than the court  has to prescribe the mode and manner in which the legislature shall perform its legislative duties.'"); *Massey v. David*, 979 So. 2d 931, 937 (Fla. 2008) ("[W]here this Court has promulgated rules that relate to practice and procedure, and a statute provides a contrary practice or procedure, the statute is unconstitutional to the extent of the conflict."); *Schoenvogel ex rel. Schoenvogel v. Venator Grp. Retail, Inc.*, 895 So. 2d 225, 234 (Ala. 2004) (citations omitted) ("The Legislature exceeds its power in the area of rulemaking if its action 'prohibits the due and orderly processes by which [a] court functions, or prevents it from properly functioning,' or disturbs the functions and orderly processes of the court[.]")

This Court has not previously addressed the provisions set forth in West Virginia Code §§ 62-6B-1 to -4 in a signed opinion.  By the plain language of the statute, those procedures are triggered only "[u]pon a written motion filed by the prosecuting

attorney, the child's attorney or the child's guardian ad litem[.]" *Id*. § 62-6B-3(a). Thus, even if the majority wished to hold that the statute trumps judicial authority on evidentiary and substantive procedural matters, those statutory procedures were not initiated in this case *at all* – either pre-trial or during trial – because no such motion was ever filed. The statute itself is silent as to whether a trial court may, sua sponte, permit a child witness testify via videoconferencing when a clear and unequivocal necessity arises during the course of a trial. Thus, even the majority's passive acceptance of legislative dictates would not apply in that the statute limits its requirements to situations where a motion is made in advance of trial. Further, the authority of the court conducting the judicial proceeding should not be hamstrung by either counsel's failure to act.

In addition, West Virginia Code §§ 62-6B-1 to -4, sets forth mandatory procedural requirements for trial courts, even though the West Virginia Rules of Criminal Procedure are intended to constitute a comprehensive procedural code for criminal cases in the trial courts. Even the Rules themselves afford trial courts great discretion via Rule 57(b) which provides: "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute." The "general import of Rule 57 is to maintain flexibility within the criminal procedure system." *State v. Nichols*, 325 A.2d 28, 33 (Me. 1974). Wide latitude is reposed in the trial court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice. *See e.g., U.S. v. Baird*, 414 F.2d 700, 710 (2d Cir. 1969), *cert. denied*, 396 U.S. 1005 (1970) ("A federal court has

the responsibility to supervise the administration of criminal justice in order to ensure fundamental fairness.").  I am persuaded that

> [i]t would be ill-advised to limit improvidently this inherent power for fear of misuse. The firing point of the legal system is with the trial judge who is best situated to administer the law and protect the rights of all. Such discretion is not limitless, but appellate review provides a proper check.

*U.S. v. Richter*, 488 F.2d 170, 174 (9th Cir. 1973).

To the extent the statutes seem to dictate precisely how a trial court *must* conduct such hearings, they have the practical effect of reducing trial court judges to mere puppets who lack discretion over witness examination.  This result is wholly inconsistent with the plain language of West Virginia Rule of Evidence 611 which provides:

> (a) *Control by the court; purposes*. The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:
> (1)  make those procedures effective for determining the truth;
> (2)  avoid wasting time; and
> (3)  protect witnesses from harassment or undue embarrassment.

To resolve the conflict between the rule and statute, this Court should have reiterated long-standing principles by holding that as a result of the authority granted to this Court by the Rule-Making Clause, West Virginia Constitution art. VIII, section 3, "'a statute governing *procedural* matters in criminal cases which conflicts with a rule

15

promulgated by the Supreme Court would be a legislative invasion of the court's rule-making powers.'" *State v. Arbaugh,* 215 W.Va. 132, 138, 595 S.E.2d 289, 295 (2004) (Davis, J., dissenting) (quoting *People v. Hollis,* 670 P.2d 441, 442 (Colo.Ct.App.1983)). *See also* Syl. Pt. 5, *State v. Wallace,* 205 W.Va. 155, 517 S.E.2d 20 (1999) ("The West Virginia Rules of Criminal Procedure are the paramount authority controlling criminal proceedings before the circuit courts of this jurisdiction; any statutory or common-law procedural rule that conflicts with these Rules is presumptively without force or effect.").

Accordingly, the new syllabus points in the instant case *should* have been as follows:

> To the extent that the provisions of W. Va. Code § 62-6B-3 exceed the requirements for the testimony of child witnesses via one-way, closed circuit television  contained in *Maryland v. Craig*, 497 US. 836 (1990), such provisions are in violation of the Separation of Powers Clause, Article V, § 1 of the West Virginia Constitution, inasmuch as they invade the exclusive province of this Court pursuant to the Rule–Making Clause, Article VIII, § 3 of the West Virginia Constitution.

> Insofar as the trial court complies with the requirements of *Maryland v. Craig*, 497 U.S. 836 (1990), West Virginia Rule of Evidence 661(a) grants the trial court the inherent authority and discretion to *sua sponte* take the testimony of a child victim in a criminal trial via one-way, closed-circuit television.

> To the extent that a trial court utilizes expert testimony to determine the necessity of permitting a child victim to testify via one-way, closed-circuit television, such testimony may be considered by the trial court insofar as it complies with Rule 702 of the West Virginia Rules of Evidence.

16

To the extent that the provisions of W. Va. Code § 62-6B-3(d) contain additional restrictions on any such expert or expert testimony, such provisions are in violation of the Separation of Powers Clause, Article V, § 1 of the West Virginia Constitution, inasmuch as they invade the exclusive province of this Court pursuant to the Rule–Making Clause, Article VIII, § 3 of the West Virginia Constitution.

The majority's statement that: "These procedural safeguards are contained not only in the aforementioned statute, but are also required by . . . the Supreme Court's holding in *Maryland v. Craig*" is immensely troubling and simply untrue. The procedural requirements contained within the statute go far beyond the requirements set forth in *Craig*. For instance, *Craig* would not require a trial court to "appoint a psychiatrist or a licensed psychologist with at least five years clinical experience" to provide the court with an expert opinion. W.Va. Code § 62-6B-3(d).

In fact, a trial court could make the necessary *Craig* determinations without relying on live expert testimony at all. *Craig* simply requires that the trial court hear "evidence" on the factors before making its determination; the parties could submit that evidence in many forms such as a written report from a psychologist or a proffer from the prosecuting attorney who interviewed the child witness. Further, as was done in this case, the trial court could call a bench conference hearing to make its own observations and seek input from counsel, consistent with *Craig*, when a child witness attempts to testify at trial but is unable. Here, the trial court found it was necessary to move the child witness out of the courtroom to finish her testimony via live closed-circuit television

17

because she was becoming traumatized. The trial court sought alternative suggestions from counsel, but heard none.

Additionally, Trial Court Rule 14.03(b) provides that a court "*may* use videoconferencing to obtain the testimony of a child witness in accordance with West Virginia Code § 62-6B-1 to -4.") (emphasis added). The word "may" generally is afforded a permissive connotation, which renders the referenced act discretionary, rather than mandatory, in nature. *See e.g., State v. Hedrick,* 204 W.Va. 547, 552, 514 S.E.2d 397, 402 (1999) ("The word 'may' generally signifies permission and connotes discretion." (citations omitted)); *Gebr. Eickhoff Maschinenfabrik Und Eisengieberei mbH v. Starcher,* 174 W.Va. 618, 626 n.12, 328 S.E.2d 492, 500 n.12 (1985) ("An elementary principle of statutory construction is that the word 'may' is inherently permissive in nature and connotes discretion." (citations omitted)). Thus, under the current language of Trial Court Rule 14.03(b), the trial court had the discretion to proceed in accordance with West Virginia Code § 62-6B-1 to -4, or not.[6]

Finally, while acknowledging the trial court "did not have the opportunity to comply with" the statutory scheme set forth in West Virginia Code § 62-6B-1 to -4 because no party made a motion for it to do so either in advance of trial or during the

---

[6] Nevertheless, I urge this Court to adopt broader language in West Virginia Trial Court Rule 14.03(b) to expressly acknowledge that trial courts have the latitude to employ alternative procedures permitted by law to protect child witnesses while testifying.

18

trial, the majority nevertheless launches into a comprehensive discussion of those statutes. This analysis was, as previously discussed, a misdirected attempt to resolve the Confrontation Clause issue by relinquishing judicial authority to the legislative branch. More to the point, however, it was wholly unnecessary because the petitioner failed to preserve this issue for appeal.

As explained above, there was no error in the manner in which the trial court allowed the child witness to testify. Moreover, the "fundamental fairness or basic integrity of the proceedings" was not compromised; to the contrary, it was enhanced. The procedures utilized by the trial court in this case were "effective for determining the truth" and necessary to protect the child witness from "undue embarrassment" and trauma. W.Va.R.Evid. 611(a); *see also Globe Newspaper Co. v. Superior Court of Norfok Cty.*, 457 U.S. 596, 607 (1982) (recognizing State has strong interest in "the protection of minor victims of sex crimes from further trauma and embarrassment"). Furthermore, the procedure utilized by the trial court avoided the waste of time, expense, and additional victim trauma of an unnecessary mistrial. Once the trial court made its "case-specific finding of necessity," the Confrontation Clause did not prohibit it from moving forward with the use of live closed-circuit television procedure "for the receipt of testimony by a child witness in a child abuse case." *Craig*, 497 U.S. at 861.

Accordingly, the manner in which the majority resolved this case was not only wrong, it compromises the core adjudicatory functions of the judiciary to resolve

19

cases fairly and impartially and to protect the constitutional rights of all persons who come before the trial courts. The majority undermines our body of case law that has demonstrated exquisite sensitivity to children who are victims of sexual assault by permitting courts to utilize constitutionally permissive measures for taking their testimony while still protecting them from undue embarrassment and trauma. Hopefully, the majority opinion will be nothing more than a blip on the landscape of more than thirty years of West Virginia jurisprudence.