729 S.E.2d 835

**STATE of West Virginia, Petitioner**

v.

**Paul Edward BOSTIC, Respondent.**

**No. 11–0617.**

Supreme Court of Appeals of
West Virginia.

Submitted April 18, 2012.

Decided June 14, 2012.

514

Darrell V. McGraw, Attorney General, Laura J. Young, Attorney General's Office, Charleston, WV, Counsel for the Petitioner.

John M. Butler, St. Marys, WV, Counsel for the Respondent.

McHUGH J.:

Before this Court are two certified questions from the Circuit Court of Pleasants County, West Virginia, both of which involve constitutional challenges to the application of certain provisions of the 1999 amendments to West Virginia's Sex Offender Registration Act, West Virginia Code § 15–12–1 et seq., which repealed the former statute found in chapter 61, article 8F of the Code of West Virginia, the statute in effect when Defendant entered his guilty plea.[1]

The first certified question posits whether state and federal constitutional prohibitions against the impairment of existing contracts were violated by the application of the 1999 amendments which, after Defendant Paul Edward Bostic entered his plea agreement, increased his required period of registration as a convicted sex offender from ten years to life. Upon careful review of the briefs and arguments of the parties, the appendix thereto, and the applicable legal authority, and as discussed in more detail below, we conclude that the first certified question is based upon a misapprehension of the law. Accordingly, we decline to answer the question.

The second certified question asks whether, in authorizing the West Virginia State Police to impose an increase in the registration period for convicted sex offenders from ten years to life, the Sex Offender Registration Act violates state and federal constitutional provisions relating to the separation of powers. We have carefully reviewed the briefs and arguments of the parties, the appendix thereto and the applicable legal authority. For the reasons discussed below, we conclude that the constitutional separation of powers provisions are not violated.

I.  Factual and Procedural Background

The relevant facts of the underlying criminal matter from which the certified questions arose are not in dispute. On January 16, 1997, Defendant was indicted in the Circuit Court of Wood County for the offense of Sexual Abuse in the First Degree[2] "by unlawfully and feloniously subjecting R.M.B. to sexual contact, at a time when the said R.M.B. was eleven (11) years of age, and he, the [Defendant], was over the age of fourteen

---

**1.** More specifically, West Virginia Code § 61–8F–1 et seq., was repealed by the Acts of the Legislature, March 10, 1999, Chapter 232, effective ninety days from date of passage, which, inter alia, also amended chapter 15 to add designated article 12, the current Sex Offender Registration Act. *See Hensler v. Cross*, 210 W.Va. 530, 558 S.E.2d 330 (2001) (generally discussing history and purpose of Sex Offender Registration Act and subsequent amendments thereto and holding West Virginia Code § 15–12–1 to 10 to be "a regulatory statute which does not violate the prohibition against *ex post facto* laws." *Id.*, at syl. pt. 5).

**2.** According to the indictment, the offending conduct occurred in October 1996. At that time, sexual abuse in the first degree was statutorily defined as follows:

(a) A person is guilty of sexual abuse in the first degree when:

(1) Such person subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion; or

(2) Such person subjects another person to sexual contact who is physically helpless; or

(3) Such person, being fourteen years old or more, subjects another person to sexual contact who is eleven years old or less.

(b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one year nor more than five years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than one year nor more than five years.

W.Va.Code § 61–8B–7 (1984).

(14) years, against the peace and dignity of the State."

Thereafter, on March 27, 1997, Defendant entered into a plea agreement with the State pursuant to which he agreed to plead guilty to the misdemeanor offense of Sexual Abuse in the Second Degree, a lesser included offense of that charged in the indictment.[3]

On May 20, 1997, Defendant was sentenced to a term of twelve months in jail, with a credit of 209 days for time served. Pursuant to the Sex Offender Registration Act in effect at that time, West Virginia Code § 61–8F–1 et seq., Defendant was also presented with and signed a Notice of Sexual Offender Registration Requirements, which advised him of, inter alia, his duty to register as a sex offender; the penalty for failure to do so; and the information he is obligated to provide and to whom. When Defendant committed the offense and entered his guilty plea, the Act also provided that anyone who was required to register as a sex offender thereunder must do so for a period of ten years. More specifically, West Virginia Code § 61–8F–4 (1996) provided:

> Any person required to register under this article [4] shall be required to do so for a period of ten years after conviction for the offense defined herein if not imprisoned, and if imprisoned, for a period of ten years after release from prison by discharge or parole. A person is no longer required to register at the expiration of ten years from the date of initial registration, when that convicted person is not otherwise required, during such period, to register. A person whose conviction is overturned for the offense which required them to register under this article shall be

permitted to petition the court for removal of their name from the registry.

W.Va.Code § 61–8F–4 (1996) (footnote added). Thus, pursuant to the above, the Notice of Sexual Offender Registration Requirements also advised Defendant that "[y]our registration must continue for ten years from today or from ten years following your release from the penitentiary on parole or completion of your sentence, whichever is later."

As previously indicated, on March 13, 1999, following the completion of Defendant's sentence but during his ten-year registration period, the Legislature repealed West Virginia Code § 61–8F–1 et seq., which was the Sex Offender Registration Act as it existed at the time Defendant entered his guilty plea, and, inter alia, amended chapter fifteen of the Code of West Virginia by adding designated article twelve. Included in the 1999 amendments was a change in the length of time certain sex offenders are required to register. More specifically, under West Virginia Code § 15–12–4, the registration period for certain sex offenders increased from ten years to life:

> (a) A person required to register under the terms of this article shall continue to comply with this section, except during ensuing periods of incarceration or confinement, until:
>
> (1) Ten years have elapsed since the person was released from prison, jail or a mental health facility or ten years have elapsed since the person was placed on probation, parole or supervised or conditional release. The ten-year registration period shall not be reduced by the sex

---

**3.** At the time of the offense and guilty plea, sexual abuse in the second degree was statutorily defined as follows:

(a) A person is guilty of sexual abuse in the second degree when such person subjects another person to sexual contact who is mentally defective or mentally incapacitated.

(b) Any person who violates the provisions of this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be confined in the county jail not more than twelve months, or fined not more than five hundred dollars and confined in the county jail not more than twelve months.

W.Va.Code § 61–8B–8 (1984).

**4.** Under the Sex Offender Registration Act in effect at the time Defendant committed the offense and entered the plea agreement, persons who were required to register thereunder were, "[a]ny person who has been convicted of a violation of the provisions of article eight-b, eight-c or eight-d [§ 61–8B–1 et seq., § 61–8C–1 et seq. or § 61–8D–1 et seq.] of this chapter ...[.]" W.Va. Code § 61–8F–2(a) (1996), in relevant part. Having pled guilty to the offense of sexual abuse in the second degree, West Virginia Code, § 61–8B–8, Defendant was required to register as a sex offender under the Act.

offender's release from probation, parole or supervised or conditional release; or (2) **For the life of that person if that person:** (A) Has one or more prior convictions or has previously been found not guilty by reason of mental illness, mental retardation or addiction for any qualifying offense referred to in this article; or (B) has been convicted or has been found not guilty by reason of mental illness, mental retardation or addiction of a qualifying offense as referred to in this article, and upon motion of the prosecuting attorney, the court finds by clear and convincing evidence, that the qualifying offense involved multiple victims or multiple violations of the qualifying offense; or (C) has been convicted or has been found not guilty by reason of mental illness, mental retardation or addiction of a sexually violent offense; or (D) has been determined pursuant to section two-a [§ 15-12-2a] of this article to be a sexually violent predator; or (E) **has been convicted** or has been found not guilty by reason of mental illness, mental retardation or addiction **of a qualifying offense as referred to in this article, involving a minor.**

W.Va. § 15-12-4 (2000)[5] (Emphasis added).

In Defendant's case, because the offense to which he pled guilty involved a minor (the victim was eleven years old), he was notified by the State Police in a letter dated October 18, 1999, of the statutory changes and that the changes applied to him.

On January 11, 2010, Defendant was indicted on two counts of failure to provide notice of sex offender registration changes, allegedly occurring on or about July 18, 2008, and June 10, 2009, in violation of West Virginia Code § 15-12-8(b) (2006), and one count of providing false information on sex offender registration, allegedly occurring on or about

July 9, 2008 and August 14, 2008,[6] in violation of West Virginia Code § 15-12-8(c) (2006). It is undisputed that the facts underlying all three counts in the January 11, 2010, indictment occurred outside the ten-year registration period in effect at the time Defendant entered the plea agreement.

Thereafter, Defendant moved to dismiss the indictment. A hearing thereon was conducted on June 29, 2010.[7] Defendant argued that he was induced into entering the 1997 plea agreement, in part, by the fact that the required registration period for one convicted of sexual abuse in the second degree was ten years whereas, in contrast, one convicted of first degree sexual abuse (the offense for which he was indicted) required registration for life. Both Defendant and his then counsel testified that the fact that Defendant would be required to register as a sex offender for ten years rather than for life was an important factor in his decision to enter the plea agreement and that, further, the lesser requirement was a material benefit derived from the agreement. Thus, Defendant contended that the plea agreement was a contract between him and the State and that the 1999 amendments to the Sex Offender Registration Act requiring that he register as a sex offender for life because the offense involved a minor impaired his pre-existing contractual rights under the 1997 plea agreement, in violation of federal and state constitutional prohibitions against the impairment of existing contracts. U.S. Const. art. I, § 10, cl. 1; W.Va. Const. art. III, § 4.

Defendant further argued that the 1999 amendments to the Act authorizing the State Police, an administrative agency under the executive branch of state government, to enhance Defendant's required period of regis-

---

5. Significant changes to the Sex Offender Registration Act generally, and to the registration period specifically, occurred in the 1999 amendments. We note, however, that West Virginia Code § 15-12-4 was again amended in the year 2000, but any such changes are neither relevant to the issues raised herein nor have any material impact thereon. Therefore, for ease of reference, we shall refer to the most recent (2000) version of the West Virginia Code § 15-12-4 throughout this opinion.

6. It is unclear why the State alleged two violations of West Virginia Code § 15-12-8(c) in a single count of the indictment. However, this issue is not presently before this Court.

7. On July 29, 2010, following the hearing on Defendant's motion to dismiss, Defendant filed Proposed Argument and Ruling on Motion to Dismiss.

tration as a sex offender without proper due process of law violates the separation of powers provisions of the state and federal constitutions. U.S. Const. art. III, § 1; W.Va. Const. art. V, § 1.

Following the hearing on the motion to dismiss, it was determined that the issues raised therein should be certified to this Court. Accordingly, by order entered April 1, 2011, the circuit court certified the following questions to this Court:

1. Does the 1999 amendment of the West Virginia Code § 15–12–1 et seq., which retroactively increased the registration period for certain sex offenders from ten (10) years to life based upon the age of the victim, violate the State Constitution, Art. 3 § 4, and Federal Constitution, Art. I, § 10, prohibiting impairment of existing contract obligations, the contract obligations herein having been created under a 1997 plea agreement between the State of West Virginia and the defendant, a significant part of which required registration as a sex offender for a period of only ten (10) years, and not life?

2. Does the 1999 amendment of West Virginia Code § 15–12–1 et seq., authorizing the State Police/Department of Public Safety, under certain circumstances, to impose an increase in the length of sex offender registration for earlier convicted sex offenders, from ten (10) years to life, without notice and right to a judicial hearing, violate the Federal Constitution and the West Virginia Constitution, Art. 5, § 1, relating to the separation of powers?

The circuit court answered both questions in the negative. Thereafter, this Court accepted the certified questions for review.

## II. Standard of Review

█ The issues presented in this matter involve questions of law certified to this Court. In such cases, our review of the issues is plenary. " 'The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*.' Syllabus point 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996)." Syl. Pt. 1, *Wilson v. Bernet*, 218 W.Va. 628, 625 S.E.2d 706 (2005). *See also* Syl. pt. 1, *Bower v. Westinghouse Elec. Corp.*, 206

W.Va. 133, 522 S.E.2d 424 (1999) ("This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court."); Syl. pt. 1, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998) ("A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court."). Following this standard, we proceed to consider the certified questions presented.

## III. Discussion

█ Two questions have been certified to this Court, each asking that we determine whether certain amendments to the Sex Offender Registration Act violate state and federal constitutional provisions. As a threshold matter, we are mindful that " '[w]hen the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment.' Syllabus Point 3, *Willis v. O'Brien*, 151 W.Va. 628, 153 S.E.2d 178 (1967)." Syl. Pt. 1, *Hensler v. Cross*, 210 W.Va. 530, 558 S.E.2d 330 (2001). Moreover, " '[i]n considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.' Syllabus Point 1, in part, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965)." *Hensler*, at syl. pt. 2, 210 W.Va. at 531, 558 S.E.2d at 331. Accordingly, we will consider each certified question in turn.

### A. First Certified Question

The first question certified to this Court asks the following:

1. Does the 1999 amendment of the West Virginia Code § 15–12–1 et seq., which retroactively increased the registration period for certain sex offenders from ten (10) years to life based upon the age of the victim, violate the State Constitution, Art. 3 § 4, and Federal Constitution, Art. I, § 10, prohibiting impairment of existing contract obligations, the contract obligations herein having been created under a

1997 plea agreement between the State of West Virginia and the defendant, a significant part of which required registration as a sex offender for a period of only ten (10) years, and not life?

The circuit court answered this question in the negative.

During the course of the June 29, 2010, hearing on the motion to dismiss, the circuit court explained the premise upon which this first question is based. The court stated, in relevant part, the following:

At the time of that plea there were two different registration requirements. There was the lifetime registration for any act of violence or act against children of certain ages. The lesser included offense, to which he pled and [was] ultimately found guilty pursuant to his plea and sentenced on, only required a ten-year registration requirement.

It is the position of the Defendant that, irrespective of Legislature pronouncements, that the heightened lifetime registration requirements imposed by the Legislature both retroactively and prospectively has, in effect, denied him the benefit of his bargain. It is the first time this Court is aware of the argument being made, but I think it is a justiciable argument and that it presents this Court with a unique question.

The question is not whether the Legislature has the authority to apply the registration requirements retroactively and prospectively. The question in this specific, fact-based generated case is whether or not, by enacting that heightened requirement, may the Legislature impose upon a court-ordered sentencing pursuant to a plea agreement and, thereby, deny the defendant the benefit of his bargain.

Courts in this state typically engage in plea bargain agreements and approvals of the plea by the courts that have been negotiated between counsel on a daily basis. To whether the import of the benefits exchanged in those pleas is a legitimate benefit or not, the defendant in this case has made a valid argument that he entered a plea to a lesser included offense due to the fact that he would then be under a ten-year registration requirement rather than a lifetime registration requirement.

And the Court can see that that is a viable argument that he was bargaining for a position that had value to him. The State was willing, under that plea agreement, to give away the lifetime requirement that he could have been required to follow if he had been convicted on the indicted charge.

■ Based upon the above, it is clear that both Defendant and the circuit court believed that, at the time the 1997 plea agreement was executed, a conviction of the indicted felony offense of sexual abuse in the first degree would have required Defendant to register as a sex offender for life. Based upon such a belief, Defendant now argues that he agreed to enter a guilty plea to sexual abuse in the second degree, in part, because that offense would have required him to register for a lesser period of time— that is, ten years. He contends that he bargained for the lesser registration period and that it was an essential term of the plea agreement. Thus, according to Defendant, application of the lifetime registration requirement under the 1999 amendments to the Sex Offender Registration Act is a violation of the constitutional provisions against the impairment of existing contracts.

Having carefully reviewed the version of the Sex Offender Registration Act in effect at the time of Defendant's plea agreement and having further compared that version to the 1999 amendments which the State seeks to impose, this Court concludes that Defendant's argument and the resulting certified question are based upon a fundamental misapprehension of the law. West Virginia Code § 61–8F–4, the Sex Offender Registration Act in effect when Defendant entered his guilty plea in 1997, provided that "[a]ny person required to register under this article shall be required to do so for a period of ten years[.]" W.Va.Code § 61–8F–4. Under the Act, and despite Defendant's argument to the contrary, the ten-year registration requirement applied to "any person required to register under this article," without regard to the offense for which that person was convicted. It was not until 1999, when West

Virginia Code § 61–8F–1 et seq. was repealed and chapter 15 was amended to add designated article 12 that the Legislature declared that persons convicted of certain designated offenses must register for life. *See* W.Va.Code § 15–12–4. In other words, at the time of the plea agreement, the offenses of sexual abuse in the first degree and sexual abuse in the second degree required the *same* period of registration; thus, the required registration period of ten years simply could not have been a factor which induced Defendant to plead guilty to the latter offense.[8] Therefore, because the first certified question is clearly based upon an erroneous legal premise, we decline to answer the question.[9]

### B. Second Certified Question

■ The second certified question asks the following:

8. In his brief and during the June 29, 2010, hearing on the Defendant's motion to dismiss, Defendant conceded there were other factors which induced him to plead guilty to the misdemeanor offense rather than face trial on a felony, including, avoiding a felony record; not being imprisoned in the penitentiary; being able to possess a firearm in the future; and being able to vote.

9. As discussed in detail above, this Court determined that a comparison of West Virginia's Sex Offender Registration Act as it existed when Defendant entered his guilty plea in 1997 to the version in effect upon the enactment of the 1999 amendments to be critical to resolution of the first certified question. It is unclear how neither Defendant, the State, nor the circuit court was aware that the period of registration for all sex offenders in 1997 was ten years and that it was not until passage of the 1999 amendments that the Legislature increased the period of registration to life for certain sex offenders such as those convicted of a qualifying offense involving a minor. By way of explanation, this Court can only surmise that perhaps it is because the current version of the Act, West Virginia Code § 15–12–1 et seq. does not make reference to the former version, which was previously set forth in West Virginia Code § 61–8F–1 et seq., or that the Acts of the Legislature and/or prior versions of the Act were not readily available to the parties. We note, however, that in the case of *Hensler v. Cross*, this Court made reference to the former statute in its discussion of the history of the Act as follows: "In 1993, when the Act was first enacted, it was contained in Chapter 61 of the West Virginia Code titled Crimes and Their Punishment.... In 1999, the Act was once again amended and moved to Chapter 15, Public Safety." 210 W.Va. at 533, 558 S.E.2d at 333.

Does the 1999 amendment of West Virginia Code § 15–12–1 et seq., authorizing the State Police/Department of Public Safety, under certain circumstances, to impose an increase in the length of sex offender registration for earlier convicted sex offenders, from ten (10) years to life, without notice and right to a judicial hearing, violate the Federal Constitution and the West Virginia Constitution, Art. 5, § 1, relating to the separation of powers?

Pursuant to its authority set forth in West Virginia Code § 15–12–2b (1999),[10] the State Police notified Defendant that, under the 1999 amendments to the Sex Offender Registration Act, his required period of registration as a sex offender had changed from ten years to life because the offense to which he had previously pled guilty involved a minor.[11]

10. West Virginia Code § 15–12–2b (1999) provides:

(a) There is hereby created within the Department of Military Affairs and Public Safety a Sex Offender Registration Advisory Board consisting of a minimum of five members appointed by the Secretary of the Department of Military Affairs and Public Safety. At least two of the members shall be experts in the field of the behavior and treatment of sexual offenders, and each shall be a physician, psychologist or social worker in the employ of this State appointed by the secretary in consultation with the Director of the Division of Health. The remaining members shall be victims rights advocates and representatives of law-enforcement agencies. Members of the board shall be reimbursed their reasonable expenses pursuant to the rules promulgated by the department of administration for the reimbursement of expenses of state officials and employees and shall receive no other compensation for their services. **The board shall utilize the staff of the division or office within the Department of Military Affairs and Public Safety designated by the secretary thereof in carrying out its duties and responsibilities as set forth in this article.**

(b) The board shall assist the circuit courts of this State in determining whether persons convicted of sexually violent offenses are sexually violent predators.

(Emphasis added)

11. The term "minor," though not defined in the Sex Offender Registration Act, is defined in West Virginia Code § 2–2–10(aa) (1998) as follows:

The following rules shall be observed in the construction of statutes, unless a different intent on the part of the Legislature be apparent from the context:

*See* W.Va.Code § 15–12–4(a)(2)(E). It is Defendant's contention that he pled guilty to second degree sexual abuse, an offense which does not take into account the victim's age but which occurs when a "person subjects another person to sexual contact who is mentally defective or mentally incapacitated." [12] W.Va.Code § 61–8B–8. He argues that in authorizing the State Police, an administrative agency under the executive branch of government, to engage in fact finding as to the victim's age and to enhance Defendant's period of registration pursuant to its determination thereof, the 1999 amendments to the Act permit the State Police to perform a judicial function, in violation of the separation of powers provisions of our state and federal constitutions.

■ The well-settled division of powers and responsibilities among the three branches of state government has been previously outlined by this Court as follows: " 'Generally speaking, the Legislature enacts the law, the Governor and the various agencies of the executive implement the law, and the courts interpret the law, adjudicating individual disputes arising thereunder.' " *State ex rel. West Virginia Citizens Action Group v. West Virginia Economic Development Grant Committee,* 213 W.Va. 255, 263, 580 S.E.2d 869, 877 (2003) (*quoting State ex rel. Barker v. Manchin,* 167 W.Va. 155, 168, 279 S.E.2d 622, 631 (1981)). *See* W.Va. Const. art. VI, § 1; art. VII, § 5; art. VIII, § 1. Indeed, in syllabus point one of *West Virginia Citizens Action Group,* we held: " 'Article V, section 1 of the Constitution of West Virginia which prohibits any one department of our state government from exercising the powers of the others, is not merely a suggestion; it is part of the fundamental law of our State and, as such, it must be strictly construed and closely followed.' Syl. Pt. 1, *State ex rel. Barker v. Manchin,* 167 W.Va. 155, 279 S.E.2d 622 (1981)." 213 W.Va. at 263, 580 S.E.2d at 877. *See* Syl. Pt. 3, *Simpson v. W.Va. Office of Ins. Com'r.,* 223 W.Va. 495, 678 S.E.2d 1 (2009); Syl. Pt. 2, *State ex rel. Steele v. Kopp,* 172 W.Va. 329, 305 S.E.2d 285 (1983).

We note that the parties aver, and our research confirms, that jurisdictions which have considered similar issues are few in number. Defendant argues that the present case is similar to that of *State v. Bodyke,* 126 Ohio St.3d 266, 933 N.E.2d 753 (2010). At issue in *Bodyke* was the amendment to Ohio's sex offender registration statute, which reclassified convicted sex offenders formerly categorized as sexually oriented offenders, habitual sex offenders, and sexual predators, as Tier I, Tier II, or Tier III sex offenders based solely upon the offense committed.[13] 933 N.E.2d at 759. Under Ohio's former law, a judge was required to consider certain factors before determining which classification best fit a particular offender. *Id.* Under the new tier system (and significant to the separation of powers challenge in *Bodyke* ), the Ohio Attorney General was directed to reclassify the existing offenders, without any involvement by the courts. *Id.* at 760. Ultimately, the Supreme Court of Ohio concluded that the amended statutory

    . . . .

(aa) The words "infant" and "minor" mean persons under the age of eighteen years as such words are used in this code or in rules and regulations promulgated by the supreme court of appeals[.]

12. *See* W.Va.Code § 61–8B–1(3) and (4) (defining the terms "mentally defective" and "mentally incapacitated").

13. As explained in *Bodyke,* under the old law, "if an offender was classified at the lowest risk level, i.e., as a sexually oriented offender," he was classified into Tier I. Among other changes, his registration requirement increased from ten years under the old law to fifteen under the amended statute. An offender "who posed an intermediate risk, i.e., less than a sexual predator but more than a sexually oriented offender, was labeled a habitual sexual offender." Such an offender, under the new law, is placed in Tier II. Under the old law, he was required to register as a sex offender for twenty years and notification to the community of his presence was required only if the judge found it appropriate. Under the new law, a Tier II offender must verify his personal information every 180 days for twenty-five years, with no community notification. Finally, a "sexual-predator classification was the highest-risk offender" under the old law, requiring offenders to verify their information every ninety days for life. Community notification was also required. The new law imposes these same obligations upon Tier III offenders as well as a more expansive "scope of registration." 933 N.E.2d at 760–61.

provisions at issue in *Bodyke* violated the separation of powers doctrine by requiring "the attorney general to reclassify sex offenders who have already been classified by court order under former law, impermissibly instruct[ing] the executive branch to review past decisions of the judicial branch and . . . . by requiring the opening of final judgments." *Id.* at 768.[14]

In the present case, Defendant contends that, as in *Bodyke,* because the enhancement of the registration period from ten years to life "required additional fact-finding about the underlying crime not made before the original court [i.e., the victim's age], legislative assignment of this function to the West Virginia State Police was a violation of the separation of powers provisions[.]" The State argues, however, that Ohio's sex offender registration laws differ from West Virginia's such that the decision in *Bodyke* should not be persuasive to this Court. The State maintains that, unlike Ohio's laws, West Virginia's do not authorize the executive branch to "reclassify" sex offenders, to review judicial decisions or require it to reopen final judgments. We agree.

In *Lemmon v. Harris,* 949 N.E.2d 803 (Ind.2011), a sex offender who had pled guilty to child molesting as a Class B felony in 1999 challenged a change in Indiana's Sex Offender Registration Act which occurred in 2007. The amended statute provided that commission of such an offense qualifies him as a "sexually violent predator," or "SVP," "by operation of law" and required that he register as a sex offender for life.[15] *Id.* at 807. The defendant, relying on *Bodyke,* argued that the "automatic designation of offenders as SVPs 'by operation of law' has the effect of permitting the [the Indiana Department of Correction], [the notifying authority], an executive branch of state government, to reopen final judgments and thereby exercise

a function reserved to the judiciary by the Indiana Constitution." *Id.* at 813–14.

The *Lemmon* court disagreed with the defendant's contention that the separation of powers doctrine was violated. The court determined that the "by operation of law" clause in the amended statute does not work to reopen a final judgment, reasoning that the defendant was an "offender" under the statute in effect when he was sentenced

because he was convicted of an offense that qualified him as one; his sentencing court did not make that determination, the Indiana Code did. This is not the case where his sentencing court considered expert testimony and expressly refused to classify [the defendant] as an SVP. In other words, the "by operation of law" clause did not change a judicial determination that [the defendant] was not an SVP to him being an SVP.

*Id.* at 814–15 (internal citations omitted).

The court in *Lemmon* did not believe that the " 'by operation of law' clause removes the judiciary's discretionary function in sentencing and places it with the [Department of Corrections]. The statute does not grant the [Department of Corrections] any authority to classify or reclassify. SVP status under [the relevant Indiana statute] is determined by the statute itself." *Id.* at 815. The court further distinguished Indiana's statute from Ohio's by noting that Indiana's sex offender registration law "preserves the judiciary's role in determining the status of offenders and their likelihood to reoffend." *Id.*

■ In the present case, the precise issue before us is relatively narrow. When Defendant pled guilty to sexual abuse in the second degree, West Virginia Code § 61–8F–4 required that all convicted sex offenders register under the Sex Offender Registration Act for a period of ten years. Upon enactment of the 1999 amendments, where the qualify-

**14.** By way of remedy, the court in *Bodyke* severed the reclassification provisions, stating that "[b]y excising the unconstitutional component, we do not 'detract from the overriding objectives of the General Assembly,' i.e., to better protect the public from the recidivism of sex offenders.' " 933 N.E.2d at 768 (internal citation omitted). The remainder of the amended law " 'which is

capable of being read and of standing alone, is left in place.' " *Id.* (Internal citation omitted).

**15.** Prior to the change in the law—when the defendant committed his crime—he was required to register for a period of ten years following his release from prison. 949 N.E.2d at 804.

ing offense involved a minor, the period of registration for life attached by operation of law. Pursuant to the language of West Virginia Code § 15–12–4(a)(2)(E), "[a] person required to register under the terms of this article **shall** continue to comply.... [f]or the life of that person if that person.... has been convicted ... of a qualifying offense ... involving a minor." (Emphasis added) " ' "It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syllabus Point 1, *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86 (1982).' Syllabus point 1, *E.H. v. Matin,* 201 W.Va. 463, 498 S.E.2d 35 (1997)." Syl. Pt. 6, *Foster Foundation v. Gainer,* 228 W.Va. 99, 717 S.E.2d 883 (2011). *Accord State v. Allen,* 208 W.Va. 144, 153, 539 S.E.2d 87, 96 (1999) ("Generally, 'shall' commands a mandatory connotation and denotes that the described behavior is directory, rather than discretionary." (Citations omitted)). Thus, the lifetime registration requirement set forth in West Virginia Code § 15–12–4(a)(2)(E) is mandatory and attaches by operation of law. In the present case, Defendant does not dispute that his victim was a minor. Indeed, the age of the victim is an objective and readily discernible fact. Not unlike the *Lemmon* case, therefore, the Sex Offender Registration Act does not grant the executive branch any authority to enhance Defendant's period of registration. Rather, the requirement that Defendant register as a sex offender for life because the victim of the qualifying offense was a minor is determined by West Virginia Code § 15–12–4(a)(2)(E) itself. The State Police simply implemented the change in the law. Thus, the circuit court correctly determined that no violation of separation of powers occurred.

Accordingly, we hold that under West Virginia Code § 15–12–4(a)(2)(E) (2000), a person required to register under the terms of West Virginia's Sex Offender Registration Act, West Virginia Code § 15–12–1 et seq., shall continue to do so, except during ensuing periods of incarceration or confinement, for life, if that person has been convicted or has been found not guilty by reason of mental illness, mental retardation or addiction of a qualifying offense as referred to in the Act, involving a minor. The authority of the West Virginia State Police to implement West Virginia Code § 15–12–4(a)(2)(E) by notifying sex offenders convicted or found not guilty by reason of mental illness, mental retardation or addiction of a qualifying offense involving a minor prior to its enactment that their period of registration has increased from registration for ten years to registration for life does not violate the separation of powers provisions of the federal and state constitutions.

### IV. Conclusion

For the reasons discussed above, this Court declines to answer the first certified question presented. We answer the second certified question in the negative, in accordance with the answer of the Circuit Court of Pleasants County, and dismiss this case from the docket of this Court.

*Certified question answered.*