IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

_____

No. 12-1206

_____

FILED

November 6, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MASTER MECHANICAL INSULATION, INC.,
Defendant Below, Petitioner

v.

RICHARD SIMMONS,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Cabell County
Honorable F. Jane Hustead, Judge
Civil Action No. 06-C-0133

CERTIFIED QUESTIONS ANSWERED

_____

Submitted: October 1, 2013
Filed:  November 6, 2013

Robert H. Sweeeney, Jr., Esq.
Nathanial A. Kuratomi, Esq.
Jenkins Fenstermaker PLLC
Huntington, West Virginia
Counsel for Petitioner

J. Michael Ranson, Esq.
George Morrone III, Esq.
Ranson Law Offices
Charleston, West Virginia

G. Patrick Jacobs, Esq.
Jacobs Law Offices
Charleston, West Virginia
Counsel for Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court.
CHIEF JUSTICE BENJAMIN concurs, in part, and dissents, in part, and reserves the
right to file a separate opinion.
JUSTICE DAVIS dissents and reserves the right to file a dissenting opinion.

# SYLLABUS BY THE COURT

1. "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996).

2. The language set forth in West Virginia Code § 23-4-2(f) (2005), which addresses the implementation of statutory amendments enacted to West Virginia Code § 23-4-2 during the 2005 session of the Legislature, pertains to "deliberate intent" cases in which the injuries occurred after July 1, 2005, and also to actions that are filed on or after July 1, 2005.

3. "When an employee asserts a deliberate intention cause of action against his/her employer, pursuant to W.Va. Code §§ 23-4-2(b)-(c) (1991) (Cum. Supp. 1991), the employer may not assert the employee's contributory negligence as a defense to such action." Syl. Pt. 8, *Roberts v. Consolidation Coal Co.*, 208 W.Va. 218, 539 S.E.2d 478 (2000).

4. An employer in a "deliberate intent" action brought pursuant to West Virginia Code § 23-4-2(d)(2)(ii) (2010) may introduce evidence that is relevant to the issues of whether an employee's conduct created a specific unsafe working condition; whether the employer had actual knowledge of that alleged specific unsafe working condition; and whether the injuries at issue were the proximate result of that specific unsafe working condition.

LOUGHRY, Justice:

By order entered on October 16, 2012, the Circuit Court of Cabell County certified three questions to this Court that pertain to the filing of a statutory claim asserting deliberate intention[1] by the respondent Richard Simmons. The first question involves an issue of statutory interpretation; the second query seeks clarification regarding the evidentiary effect of Roberts v. Consolidation Coal Co.,[2] and the third inquiry pertains to the evidentiary effect of a ruling that Mr. Simmons is eligible for workers' compensation benefits. We will answer each of the certified questions in turn.

## I. Factual and Procedural Background

The facts of this case, taken from the trial court's order, are largely undisputed. Mr. Simmons was injured on April 9, 2004, in Portsmouth, Ohio, while engaged in certain activities at an apartment complex that was being demolished by the petitioner Master Mechanical Insulation, Inc. ("Master Mechanical"). Master Mechanical had a contract to perform asbestos abatement activities at the site. As a member of the Asbestos Worker's Union Local 207, Mr. Simmons was employed periodically by Master Mechanical. Prior to the date of the injury at issue, Mr. Simmons had last worked at this site on April 6, 2004.

---

[1]See W.Va. Code § 23-4-2(d)(2)(ii) (2010).

[2]208 W.Va. 218, 539 S.E.2d 478 (2000).

1

On Thursday, April 8, 2004, after having completed a forty-hour work week, Mike Plants,[3] a supervisor for Master Mechanical, telephoned the chief supervisor, Richard Meckstroth, to discuss additional work in need of completion that week. During that conversation, Mr. Plants told Mr. Meckstroth that since two workers[4] were being sent to Portsmouth the next day to prepare for the following week's work, he would travel to the site to confirm that everything was in order.[5] When the telephone conversation ended, Mr. Simmons asked Mr. Plants if he could ride with him to the Portsmouth job site.

After Mr. Simmons and Mr. Plants arrived at the job site on Friday, April 9, 2004, Mr. Simmons helped unload supplies. Neither Mr. Simmons nor Mr. Plants were paid for any work they performed at the Portsmouth job site on that date.[6] The two Master Mechanical employees who were assigned to work at the Portsmouth job site on April 9, 2004, were Joe Plants and Eddie Borden. At some point, Mike Plants had a discussion with Joe Plants, Eddie Borden, and Richard Simmons. Mike Plants told Joe Plants to remove a decontamination unit that was in Building B of the work site and relocate it in Building C.

[3]Mr. Plants is also a member of the Asbestos Worker's Union; he is paid by the hour and is owed overtime when appropriate.

[4]Joe Plants and Eddie Borden.

[5]On occasion, Mr. Plants performed work-related activities without remuneration for Master Mechanical.

[6]According to the trial court's findings of fact, Joe Plants and Mike Plants occasionally performed work-related activities for Master Mechanical without pay.

After Mike Plants instructed Joe Plants to retrieve the decontamination unit located in Building B, Mr. Simmons accompanied Joe Plants to Building B. The unit was located on the second floor balcony, which was in excess of ten feet off the ground. The railings on the balcony had been removed for purposes of the work at issue. Mr. Simmons went to the second floor of the building to remove the decontamination unit while Mr. Plants remained on the ground level. The plan was for Mr. Simmons to push the unit over the edge of the second floor.[7] In the process of pushing the unit, Mr. Simmons fell off the edge of the balcony and suffered injuries as a result of the fall.

Mr. Simmons filed a workers' compensation claim for his injuries and the claim was denied. The denial of benefits was upheld by the Office of Judges and the Board of Review. On September 19, 2008, this Court found that the injuries sustained by Mr. Simmons were compensable under the West Virginia Workers' Compensation Act. Upon this finding of compensability, Mr. Simmons amended his previously-filed negligence action and asserted a deliberate intent claim against Master Mechanical.[8]

By order entered on October 16, 2012, the circuit court certified the following questions:

---

[7]The unit was situated at least ten feet from the edge of the balcony.

[8]Mr. Simmons dismissed his negligence count.

3

1. Is Simmons' claim against Master Mechanical governed by the 2005 amendment to the deliberate intent statute, W.Va. Code § 23-4-2(d)(2)(ii), pursuant to *Roney v. Gencorp*, 431 F.Supp.2d 622 (S.D. W.Va. 2006) and *Corley v. Eastern Assoc. Coal Corp.*, 2009 U.S. Dist. LEXIS 22080 (N.D. W.Va. 2009)?

Circuit Court's Answer: Yes.

2. In light of the Supreme Court of Appeals' decision in *Roberts v. Consolidation Coal Co.,* 539 S.E.2d 478 (W.Va. 2000) and the facts as set forth above, is an employer prohibited from introducing evidence or testimony, or arguing that an employee's conduct in the performance of the work for the employer was the proximate cause of the plaintiff's injury?

Circuit Court's Answer: Yes.

3. In light of the Supreme Court's ruling of September 19, 2008 that Simmons' injury was compensable under the West Virginia Worker's Compensation Act, is Master Mechanical precluded from arguing that Simmons was at the site of his own volition, and voluntarily agreed to remove the decontamination unit from the second floor of Building B?

Circuit Court's Answer: Yes.

## II. Standard of Review

That our review is plenary is well-established. *See State v. Bostic*, 229 W.Va. 513, 518, 729 S.E.2d 835, 840 (2012). In syllabus point one of *Gallapoo v. Wal-Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996), we held: "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." We proceed to determine whether the circuit court committed error by answering each of the certified questions in the affirmative.

4

## III. Discussion

### A. Applicability of 2005 Amendments

During the 2005 West Virginia legislative session, certain amendments were enacted to the "deliberate intent" statute. *See* 2005 W.Va. Acts, ch. 248 (eff. July 1, 2005). Included in the statutory changes was language by which the requisite showing of an employer's "subjective realization" of an unsafe working condition was altered to require evidence of the employer's "actual knowledge" of an alleged unsafe working condition. *See* W.Va. Code § 23-4-2(d)(2)(ii)(B) (2005). The Legislature expressly provided that the 2005 amendments applied to "all injuries occurring and all actions filed on or after the first day of July, Two Thousand Five." *Id.* at § 23-4-2(f). Seeking to come within the pre-2005 amendment standards, Mr. Simmons argues that the Legislature intended that the new language would be applied prospectively and only to those cases where *both* the injury and the filing of the civil action occur after July 1, 2005.

In support of his position, Mr. Simmons suggests that the use of the term "and" indicates that the two specified occurrences–"injuries occurring" and "actions filed"–must coexist to invoke the provisions of the amended statute. W.Va. Code § 23-4-2(f). As the injury at issue occurred prior to July 1, 2005, Mr. Simmons argues that the 2005 amendments are not applicable to his case. Relying on the statutory maxim that every word chosen must be accorded specific meaning, he maintains that the circuit court erred in deciding that either

5

the injury *or* the filing of the action could independently trigger the application of the 2005 amendments. *See State ex rel. City of Huntington v. Lombardo*, 149 W.Va. 671, 698, 143 S.E.2d 535, 551 (1965) ("A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of a statute.").

To illustrate his point, Mr. Simmons refers to a decision of this Court in which we addressed the significance of the inclusion of the term "and" within another workers' compensation statute. In *Emmel v. State Compensation Director*, 150 W.Va. 277, 145 S.E.2d 29 (1965), we discussed the burden imposed on a workers' compensation claimant to prove that he/she sustained an injury both in the course of and resulting from his/her employment. As the Court explained, "[t]he two phrases, 'in the course of' and 'resulting from' are not synonymous and both elements must concur in order to make a claim compensable." *Id.* at 281, 145 S.E.2d at 32. Given the unmistakable emphasis in *Emmel* on the conjunctive nature of the term "and," Mr. Simmons posits that the statutory language at issue in this case should be similarly applied in the conjunctive rather than the disjunctive.

In response, Master Mechanical maintains that the conjunctive meaning of "and" is met by virtue of the fact the 2005 amendments apply to two separate events:  (1) injuries that occur after July 1, 2005, and (2) claims that are filed after July 1, 2005, regardless of when the injury occurred.  Rather than reading the statutory language in a

6

precedent condition fashion as suggested by Mr. Simmons, the statute need only be read as pertaining to both situations specified above. That this interpretation is logical is easily demonstrated.

Given that the effective date of the statutory amendments at issue is the same date chosen by the Legislature to implement the changes, it is logical to assume that the Legislature sought to apply the new provisions to all "deliberate intent" actions where the injuries occurred post July 1, 2005, *as well as* those actions that were filed on that date or later but involved injuries which occurred pre-amendment. In this fashion, the Legislature brought every deliberate intent action that was filed after July 1, 2005, under the new law. Mr. Simmons' argument that the conjunctive "and" requires that both events must take place post July 1, 2005, fails because there is no common word or phrase to which both events relate. In illustration, the term employment in the phrase "both in the course of and resulting from his employment" at issue in *Emmel* clearly pertained to both parts of the clause. In this case, however, the use of the term "and" is used only in the sense of providing an additional factual scenario that may invoke the amended statutory language rather than identifying a necessary element required to establish a statutory claim. This distinction is critical.

Upon a reasoned consideration of the position advanced by Mr. Simmons, we wholly reject his contention that the Legislature intended for its 2005 amendments to affect

only those cases in which both the injury and the filing of the action occurred after July 1, 2005.  Accordingly, we hold that the language set forth in West Virginia Code § 23-4-2(f) (2005), which addresses the implementation of statutory amendments enacted to West Virginia Code  § 23-4-2 during the 2005 session of the Legislature, pertains to "deliberate intent" cases in which the injuries occurred after July 1, 2005, and also to actions that are filed on or after July 1, 2005.  Our decision on this issue is in accord with the circuit court's affirmative response to the first certified question.[9]

## B.  Relevance of Employee's Conduct

Mr. Simmons seeks to prevent Master Mechanical from introducing any evidence at trial with regard to his conduct at the Portsmouth job site on the date of his injury.  As support for his position, he looks to this Court's holding in syllabus point eight of *Roberts v. Consolidation Coal Co.*, 208 W.Va. 218, 539 S.E.2d 478 (2000), that "[w]hen an employee asserts a deliberate intention cause of action against his/her employer, pursuant to W.Va. Code §§ 23-4-2(b)-(c) (1991) (Cum. Supp. 1991), the employer may not assert the employee's contributory negligence as a defense to such action."  Based solely on this point of law, Mr. Simmons argues that his conduct has no probative value with regard to the five

---

[9]Two federal courts in this state have interpreted the statutory provision at issue consistent with the decision we reach in this case.  *See Corley v. Eastern Ass'd Coal Corp.,* 2009 WL 723120 (N.D. W.Va. 2009); *Roney v. Gencorp.*, 431 F.Supp.2d 622 (S.D. W.Va. 2006).

statutory elements necessary to prove a "deliberate intent" action. *See* W.Va. Code § 23-4-2(d)(2)(ii).

We revisited the statutory origins of our workers' compensation system in *Roberts*, observing that "the right to workmen's compensation benefits is based wholly on statutes, [and] in no sense based on the common law." 208 W.Va. at 234, 539 S.E.2d at 494 (quoting *Bounds v. State Workmen's Comp. Comm'r*, 153 W.Va. 670, 672, 172 S.E.2d 379, 383 (1970)). Within the statute that creates a "deliberate intent" action is the following statement of legislative intent concerning the demarcation between common law and our workers' compensation laws:

> It is declared that enactment of this chapter and the establishment of the workers' compensation system in this chapter was and is intended to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee except as expressly provided in this chapter and to establish a system which compensates even though the injury or death of an employee may be caused by his or her own fault or the fault of a coemployee; that the immunity established in sections six [§ 23-3-6] and six-a [§ 23-3-6a], article two of this chapter is an essential aspect of this workers' compensation system; that the intent of the Legislature in providing immunity from common lawsuit was and is to protect those immunized from litigation outside the workers' compensation system except as expressly provided in this chapter; that, *in enacting the immunity provision of this chapter, the Legislature intended to create a legislative standard for loss of that immunity of more narrow application and containing more specific mandatory elements than the common law tort system concept. . . .*

W.Va. Code § 23-4-2(d)(1) (emphasis supplied).

In considering whether the affirmative defense of contributory negligence could be asserted in *Roberts,* we recognized that there are only two legislated defenses to a workers' compensation claim: intoxication and self-inflicted injury. *See* 208 W.Va. at 236, 539 S.E.2d at 496. As a result, we decided against the "adoption, by way of implication, of additional defenses sounding in contributory negligence," reasoning that this "would be inconsistent with the definite legislative intent 'to establish a system which compensates even though the injury or death of an employee may be caused by his own fault.'" *Id.* (quoting W.Va. Code § 23-4-2(d)(1)).[10]

In view of our holding in *Roberts* that the defense of contributory negligence may not be asserted in a "deliberate intent" action, Mr. Simmons contends that evidence of an employee's conduct with relation to the work place injury is barred. Consistent with his position that the facts relevant to proximate causation are not relevant to his "deliberate intent" action, Mr. Simmons seeks to prevent any evidence of his conduct from being admitted at trial. In making these arguments, Mr. Simmons not only confuses the distinction between liability and causation but he also misapprehends the statutory design of a

---

[10]When *Roberts* was issued, the quoted statutory language appeared at subsection (c)(1); to avoid confusion we identify the current location of the language–subsection (d)(1).

10

"deliberate intent" action.

As an initial matter, we observe that the legislative design of providing a system of recovery even in the occurrence of a self-caused injury[11] still succeeds even when an employee's actions are considered for purposes of a "deliberate intent" action. Under the statutory scheme, the employee's actions[12] are not relevant for purposes of the workers' compensation benefits provided by statute. *See* W.Va. Code § 23-4-2(a). When, however, the employee or other statutorily-specified representative decides to seek recovery for "any excess of damages over the amount received or receivable" in workers' compensation by asserting a "deliberate intent" action, the right of additional recovery is wholly controlled by the five-prong standard provided for establishing this statutory claim. W.Va. Code § 23-4-2(c); -2(d)(2)(ii). In specific contrast to our no-fault system of workers' compensation, the elements of a "deliberate intent" action suggest that an employee's actions may be relevant to his/her right of recovery.

Through his attempts to exclude evidence of his actions, Mr. Simmons overlooks the statutorily-specified elements of the "deliberate intent" action that clearly invite and, in some instances, may actually require a consideration of an employee's actions

---

[11]We are not referring to instances of self-inflicted injury. *See* W.Va. Code § 23-4-2(a).

[12]Barring self-inflicted injury or alcohol-induced injury. *See* W.Va. Code § 23-4-2(a).

11

relevant to the resulting injuries. The first prong of the five-part "deliberate intent" standard requires proof "[t]hat a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death." W.Va. Code § 23-4-2(d)(2)(ii)(A). Mr. Simmons contends that he need only submit evidence to show that he was "working on an unprotected second floor balcony without fall protection . . . to establish part (A)" and that his "conduct is irrelevant with respect to the unsafe working condition in this case." We disagree.

Both before and since the issuance of our *Roberts* decision, this Court has made clear that an employee cannot create the unsafe working condition that is at the center of his "deliberate intent" cause of action. In *Deskins v. S.W. Jack Drilling Co.*, 215 W.Va. 525, 600 S.E.2d 237 (2004), we recognized the role that the employee played with regard to the alleged unsafe working condition:

> there was no unsafe working condition in this case until the appellant moved in between the two pieces of equipment as they were being pushed together. In other words, the specific unsafe working condition only existed when the appellant went into the area between the pipe rack and the pipe tub as the equipment was being moved into position by the dozer. The appellees [employer] had no knowledge that the appellant went into the dangerous area as he had been seen moving away from the equipment after his supervisor instructed him to do so. As the circuit court noted, "the specific unsafe working condition . . . occurred within seconds after he was instructed to, and did, move to a safe area."

*Id.* at 531, 600 S.E.2d at 243.

12

Seeking to characterize *Deskins* as inapposite, Mr. Simmons argues that "[t]he focus in *Deskins* was not on the employee's conduct, but on the employer's." While the element of the five-prong "deliberate intent" test that the circuit court examined was the employer's subjective realization of a specific unsafe working condition,[13] the effect the employee's actions had with regard to the creation of the unsafe working condition was pivotal to the court's grant of summary judgment in favor of the employer. In affirming that ruling, this Court underscored the interplay between the employee's actions in creating a "sudden" unsafe working condition and the ability of the employer to "realize and appreciate the risk." 215 W.Va. at 531, 600 S.E.2d at 243.

Similarly, in *Blevins v. Beckley Magnetite, Inc.*, 185 W.Va. 633, 408 S.E.2d 385 (1991), this Court considered the fact that the employee's own actions in removing a gate installed as a safety mechanism near an operating conveyor belt created the very unsafe working condition for which he sought recovery.[14] *Id.* at 639-40, 408 S.E.2d at 391-92. We upheld the trial court's grant of judgment notwithstanding the verdict in the employer's favor based on the grounds that the jury had not been presented with sufficient evidence to establish the employer had a subjective realization and appreciation of an unsafe working

[13]In 2005, the Legislature amended the statute to replace "subjective realization" with "actual knowledge." *See* 2005 W.Va. Acts, ch.248; W.Va. Code § 23-4-2(d)(2)(ii)(B)(2005).

[14]We found that "[a] specific unsafe working condition . . . only existed when the appellant went into the guarded area, without first turning off the equipment, . . . failing to comply with safety procedures." 185 W.Va. at 639, 408 S.E.2d at 391.

13

condition. *Id.* at 640-41, 408 S.E.2d at 392-93. Seeking to minimize the significance of the employee's actions in that decision, Mr. Simmons propounds that *Blevins* is inapplicable because there was no discussion about proximate causation.[15]

Mr. Simmons' attempt to distinguish our decisions in *Deskins* and *Blevins* based on which of the five statutory elements were analyzed for purposes of considering the employee's actions is unavailing. To suggest that an employee's actions are relevant only for purposes of establishing the existence of an unsafe working condition and the employer's awareness of that condition, as it was in both *Deskins* and *Blevins,* but not for purposes of proximate causation is altogether illogical. The fact that the proximate causation prong is expressly tied to the "specific unsafe working condition" by statute further demonstrates the fallacy of this contention. W.Va. Code § 23-4-2(d)(2)(ii)(E); *see supra* note 15.

---

[15]The fifth factor required to establish a "deliberate intent" action demands a showing that the employee "suffered serious compensable injury or compensable death . . . as a direct and proximate result of the specific unsafe working condition." W.Va. Code § 23-4-2(d)(2)(ii)(E).

14

The law is clear that, as part of a "deliberate intent" action, a jury is entitled to hear evidence of whether an employee's actions created the alleged specific unsafe working condition as well as whether an employer had actual knowledge of the alleged specific unsafe working condition. *See* W.Va. Code § 23-4-2(d)(2)(ii) (mandating jury determination of five elements of "deliberate intent" claim); *Deskins*, 215 W.Va. at 531, 600 S.E.2d at 243; *Blevins*, 185 W.Va. at 641, 408 S.E.2d at 393. Master Mechanical correctly asserts that this Court's ruling in *Roberts* with regard to the non-availability of the defense of contributory negligence in a "deliberate intent" action has no bearing on the elements that are required to be established in such a case. Absent successful demonstration of all five of the statutory elements provided in West Virginia Code § 23-4-2(d)(2)(ii)(A)-(E), an employee cannot recover under a theory of "deliberate intent." W.Va. Code § 23-4-2(d)(2)(iii)(B) (providing that failure to prove one or more statutory factors specified in subsection (d)(2)(ii)(A)-(E) mandates summary judgment or directed verdict); Syl. Pt. 2, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991) ("To establish 'deliberate intention' in an action under *W.Va. Code* § 23-4-2(c)(2)(ii) (1998), a plaintiff or cross-claimant must offer evidence to prove each of the five specific statutory requirements."); *accord Marcus v. Holley,* 217 W.Va. 508, 520, 618 S.E.2d 517, 529 (2005) (recognizing that "deliberate intent" plaintiff "must make a prima facie showing of dispute on each of the five factors" to withstand summary judgment motion) (citing *Mumaw v. U.S. Silica Co.*, 204 W.Va. 6, 9, 511 S.E.2d 117, 120 (1998)).

The position advocated by Mr. Simmons would amount to a judicial rewriting of the standard expressly legislated for proving a "deliberate intent" claim. If we adopted his position and prevented an employer from introducing evidence clearly relevant to the issues of the alleged specific unsafe working condition and the resultant injury, we would be eliminating the critical element of causation provided in the statute. *See* W.Va. Code § 23-4-2(d)(2)(ii)(E). Under the five-prong standard adopted to identify the limited instances in which a subscribing employer's immunity is statutorily abrogated, the issue of an employee's conduct is clearly relevant for purposes of determining, *inter alia*, the existence of a specific unsafe working condition; the employer's actual knowledge of that specific unsafe working condition; and whether the employee's injuries were the direct and proximate result of that specific unsafe working condition. Nothing in this Court's decision in *Roberts* prevents the employer from introducing evidence that is relevant to the five statutory factors necessary to prove a statutory claim of "deliberate intent." Accordingly, we hold that an employer in a "deliberate intent" action brought pursuant to West Virginia Code § 23-4-2(d)(2)(ii) may introduce evidence that is relevant to the issues of whether an employee's conduct created a specific unsafe working condition; whether the employer had actual knowledge of that alleged specific unsafe working condition; and whether the injuries at issue were the proximate result of that specific unsafe working condition. Accordingly, we answer the second certified question in the negative.

## C. Evidence Relating to Employee's Work Site Presence

Through the final certified question, Mr. Simmons seeks to prevent Master

Mechanical from introducing evidence at trial with regard to the voluntary nature of his

completion of work at the Portsmouth site on the date of his injury. We find it necessary to

reframe the third certified question to remove language which pertained to whether Master

Mechanical was prohibited from arguing that Mr. Simmons was at the work site of his own

volition.[16] *See City of Fairmont v. Retail, Wholesale, & Dep't Store Union,* 166 W.Va. 1,

3-4, 283 S.E.2d 589, 590 (1980) (recognizing that this Court has "traditionally maintained

that upon receiving certified questions we retain some flexibility in determining how and to

what extent they will be answered"). Accordingly, we address the following question:

> In light of the Supreme Court's ruling of September 19, 2008,
> that Mr. Simmons' injury was compensable under the West
> Virginia Worker's Compensation Act, is Master Mechanical
> precluded from arguing that Mr. Simmons voluntarily agreed to
> remove the decontamination unit from the second floor of
> Building B?

Because an award of workers' compensation benefits requires proof that the

[16]To the extent that the third certified question raised the issue of whether Master Mechanical is precluded from introducing any evidence that would conflict with the predicate finding necessary for an award of workers' compensation–that Mr. Simmons was acting in the course of his employment at the time of his injury–that issue has been resolved with this Court's September 19, 2008, compensability ruling. The fact that Mr. Simmons voluntarily traveled to the work site on that day simply has no bearing on the issue of whether he can establish the required elements of a "deliberate intent" claim.

17

employee sustained injury in the course of and resulting from his employment,[17] Mr. Simmons argues that his benefit award necessarily serves as a bar to any evidence Master Mechanical seeks to introduce pertaining to his presence and actions at the work site.[18] He contends that his "purpose or motivation for being on the worksite has <u>no bearing</u> on whether an unsafe working condition existed and no bearing on what MMI [Master Mechanical] knew about."

Responding to these arguments, Master Mechanical asserts that the finding that his injury comes within the parameters of basic workers' compensation is wholly distinct from his attempt to recover additional compensation for the alleged "deliberate intent" of his employer relative to that injury. Compensability determinations made pursuant to West Virginia Code §§ 23-4-1 to -1g (2010) do not require determinations as to the existence of unsafe working conditions; an employer's knowledge of those unsafe working conditions; whether an employer intentionally exposed an employee to an unsafe working condition; or whether the injury resulted from a specific unsafe working condition. In short, the compensability requirements set forth in section one, which are relatively easy to meet, stand in stark contrast to the five-part "deliberate intent" standard set forth in section two. *Cf.* W.Va. Code §§ 23-4-1 to -1g to 23-4-2(d)(2)(ii). Master Mechanical argues, and we agree,

---

[17]*See* Syl. Pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W.Va. 796, 172 S.E.2d 698 (1970).

[18]*See supra* note 16.

18

that the drastically different standards of recovery prevent the issuance of a compensability ruling for basic workers' compensation from having a preclusive effect on the introduction of evidence in a "deliberate intent" action.

Given the clearly distinct type of recovery that the Legislature envisioned in fashioning the "deliberate intent" standard–one that exists *only* upon proof of each of those five specified elements–there is absolutely no basis for concluding that a compensability ruling has any evidentiary effect with regard to the proof of those unique statutory elements. Just as we refused to judicially rewrite the five-prong standard to prevent the introduction of evidence regarding an employee's actions, we similarly will not refashion the standard to prohibit relevant evidence bearing on the issue of whether "the employer . . . intentionally thereafter exposed an employee to the specific unsafe working condition." W.Va. Code § 23-4-2(d)(2)(ii)(D). Master Mechanical has the right to offer evidence to contradict Mr. Simmons' anticipated testimony that he was intentionally directed and exposed to an unsafe working condition. Were we to rule otherwise, we would be lessening the statutory burden of proof required for recovery in a "deliberate intent" action. *See* W.Va. Code § 23-4-2(d)(2)(iii)(B). Accordingly, we respond to the third certified question in the negative.

19

## IV. Conclusion

Based on the foregoing, each of the questions posed by the Circuit Court of Cabell County in its order of October 16, 2012, has been answered:  the first in the positive; the second in the negative; and the third, as reframed, in the negative.

Certified questions answered.

20